McGRAW v. McGRAW et al.

(Circuit Court of Appeals, Sixth Circuit.  January 4, 1910.)

No. 1,952.

1. WILLS (§ 443*)—GENERAL RULES OF CONSTRUCTION—INTENTION OF TESTATOR.

In the construction of a will, it is the first duty of a court to ascertain the intention of the testator, for which purpose all the provisions of the will should be examined so as to ascertain his general purpose, and, unless the plain import of the words demand otherwise, they should be so construed as to be consistent each one with all the others and not in violation of law, statutory or general.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 960; Dec. Dig. § 443.*]

2. WILLS (§ 449*)—CONSTRUCTION AGAINST PARTIAL INTESTACY.

A will should be so construed as to prevent intestacy as to any part of the testator's property, if such a construction may reasonably be given.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 965; Dec. Dig. § 449.*]

3. WILLS (§ 449*)—PARTIAL INTESTACY.

A will in terms gave, devised, and bequeathed the testator's entire estate, real, personal, or mixed, to trustees to be held and managed on certain trusts, and provided that on the death of the testator's wife and daughter, and after the payment of all his debts, "my remaining estate, real and personal, shall be distributed by my said trustees as follows," and, after making a specific bequest, that "the residue of said estate" should be divided and distributed in certain proportions to persons therein named or designated. Held, that it was the evident intention of the testator to dispose of all of his property, and that the will should not be so construed as to leave him intestate with respect to certain real estate which was excepted from the property the trustees were authorized to sell and not specifically devised.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 965; Dec. Dig. § 449.*]

**4.** Perpetuities (§ 6*)—Suspension of Absolute Power of Alienation—Construction of Testamentary Trust.

In a will which impliedly prohibited trustees, to whom the entire estate was devised and bequeathed in trust, from selling a certain building and the lots on which it stood, but provided that they should control and manage the same, and that the estate should not finally be distributed until after the death of both the testator's wife and daughter, a provision, that it should be distributed "upon the death of my said wife and daughter and after the payment of all my said debts," did not create a distinct trust for the payment of the debts which should continue beyond the lives of the wife and daughter and until such debts were actually paid, nor operate to suspend the power of alienation of the building and lots for a longer period that during the continuance of the two lives, in violation of Comp. Laws Mich. 1897, §§ 8796, 8797, but the meaning of the provision in respect to the debts was nothing more than that the distributees to whom the property then passed should take the same subject to the payment of the debts, as they must in any case under the law.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 49, 52; Dec. Dig. § 6.*]

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

Suit in equity by William McGraw against Homer McGraw and others. Decree for defendants, and complainant appeals. Affirmed.

The following is the statement of the case prepared by Harlan, Circuit Justice:

The basis of this suit is the last will of Thomas McGraw, made July 30, 1892. The testator died in Michigan on the 11th of October, 1897, being at the time of his death a citizen and resident of that state. The plaintiff, who is a son of the testator's brother, Miles McGraw, and a citizen of Texas, claims an estate in fee in an undivided one-thirtieth of the real property in Detroit, known as the McGraw Building and the lots upon which it is located. He brought this suit to remove the cloud upon his title, arising, he alleges, from the claims made by the defendants and others. The defendants named, whether individual or corporate, are citizens of Michigan, and no point is made as to the jurisdiction of the court, so far as jurisdiction depends on diversity in the citizenship of the parties.

The controlling questions in the case are thus stated in the twenty-ninth paragraph of the bill:

"(29) That your orator claims and insists that under the proper construction of said last will and testament and the codicils thereto, said McGraw building and the lots upon which the same is situated are not disposed of by said last will and testament and are, under the laws of the state of Michigan, intestate property, and that your orator as one of the heirs at law of said Thomas McGraw has an estate in fee simple in an undivided one-thirtieth part thereof; whereas, the defendants claim and insist that under the proper construction of said last will and testament said McGraw building and the lots upon which the same is situated are disposed of by said last will and testament, and that the defendants Homer McGraw and Hoyt Post, trustees under said last will and testament, and their successors in trust, and their co-trustees in case of the appointment of a trustee to succeed said Charles E. Swales, have, in virtue of said last will and testament, an estate therein for and during the lives of said Sarah L. McGraw and said Ivey McGraw Serrill, with contingent remainders over to the persons and for the uses and purposes set forth in the tenth paragraph of said last will and testament."

A clear understanding of these questions can be had only after an examination of the entire will. It is appropriate therefore to give in full the will and the annexed codicils. They are as follows:

"First. I give, devise and bequeath to Homer McGraw, Hoyt Post, and Charles E. Swales, all of Detroit, Mich., and to their survivors or survivor

and successors appointed by said survivors or survivor, as hereinafter provided, all my property and estate, real, personal and mixed, wherever the same may be situated, in trust, nevertheless, and for the uses and purposes and subject to the conditions following: They shall take possession of all of said estate and have the control, care and management thereof, and shall have full power and authority at their discretion to sell, dispose of and convey in fee simple any and all of said estate, excepting, however, the block formerly known as Mechanics' Hall and now called the McGraw Building situated at the corner of Griswold street and Lafayette avenue in said city of Detroit, and the lots on which the same is situated; and excepting also my homestead and my household goods and furniture, and out of the proceeds of such sales and from the income of said estate, said trustees shall until all debts and claims against my estate are fully settled and paid, pay quarterly to my beloved wife, Sarah I. McGraw, at the rate of three thousand dollars ($3,000.00) per annum for her support and maintenance, and shall pay quarterly to my daughter, Ivey F. McGraw, or to her guardian for her, if she shall then be a minor, at the rate of fifteen hundred dollars ($1,500.00) per annum, for her education, support and maintenance, and shall pay quarterly to each of my sisters, Elizabeth Ford and Mary Ann Williams, if they shall survive me, at the rate of three hundred dollars ($300.00) per annum, and quarterly to my stepson, James Henry Selden, if he shall survive me, at the rate of two hundred dollars ($200.00) per annum, to aid in her support and maintenance; and shall expend the sum of three hundred dollars ($300.00) per annum in the purchase of law books to be added to the law library I now have in said McGraw building, for the use of lawyers occupying offices in said block, said trustees shall also, during said time, pay rent for the pew in St. John's Church, which I now occupy, or a pew in such other church as my wife may wish to attend, and pay the taxes and keep up the necessary repairs on my homestead and said McGraw building, the above provisions in favor of my said wife, daughter, stepson and sisters are intended to be personal, and to cease as to each one of them with her or his death.

"Second. My said trustees are authorized and directed to erect over my grave a suitable monument at such cost as their judgment shall dictate and pay for the same out of the income of my said estate, and as part of the expenses for administering the same, provided I shall not during my lifetime have erected a monument for the purpose.

"Third. It is my expectation that said Homer McGraw will, if agreeable to my said trustees, devote his whole time and attention to the care and management of said estate, and it is my desire that so long as he shall do so with the consent and agreement of my said trustees, he shall receive out of the gross income of said estate such reasonable salary for such services as my said trustees shall fix, the same to be treated and considered as part of the expense of managing said estate, and to be paid monthly.

"Fourth. My said trustees are authorized, if I shall not do so in my lifetime, to erect one or more additional stories upon the top of the said McGraw building, this to be done out of a fund to be accumulated out of the net income, and they are at liberty for this purpose, if in their judgment it shall be best, to delay the payment of the principal of the incumbrances on said premises; my present judgment is that probably within say five years after my decease such erection would be profitable but with this suggestion I leave the matter in the discretion of my said trustees. In case said McGraw building shall be destroyed or partly destroyed by fire or otherwise, my said trustees are hereby authorized to rebuild or reconstruct the same.

"Fifth. The residue of the proceeds of said sales and of the net income of said estate shall be used to pay all my just debts, and upon the payment of all other debts, the same shall be applied as fast as may be, and set aside and accumulated to be applied as fast as may be to the payment of all mortgages and incumbrances which may exist on said McGraw building property and on my said homestead.

"Sixth. After all my debts and mortgages and all incumbrances on my estate are fully paid, and when the net income of my estate shall have reached the sum of twenty-five thousand dollars ($25,000.00) per annum, my said trustees shall set aside at least twenty-five hundred dollars ($2,500.00) a year un-

[li] the sum of about fifteen thousand dollars ($15,000.00) shall be accumulated, which sum they shall expend in the erection of a suitable fountain of artistic design on the triangular parcel of ground between the city hall and Michigan avenue, and Griswold street in the city of Detroit, or in case that ground shall not be obtainable, then on some other suitable public ground which my trustees may select in that vicinity.

"Seventh. My homestead and my household goods and furniture may be occupied and used by my wife during her lifetime free of rent or charge, and by my daughter with her so long as they live together; and after the death of my said wife my said daughter, Ivey, may occupy and use the same, if not sold, during her lifetime free of rent or charge; and at the death of both my said wife and daughter said homestead, if not sold; shall go in fee simple to the children if any then living, by lawful marriage of my said daughter Ivey, and to the children, if any then living of my deceased child, by right of representation, their heirs and assigns forever. I empower my trustees, however, with the advice and consent of my wife, if at any time in her lifetime she shall desire it or after her death with the advice and consent of my said daughter Ivey, provided the majority of my said trustees shall deem it best, to sell and convey my said homestead, in which case the proceeds of such sale shall fall into and become a part of the residuum of my estate.

"Eighth. After all debts and demands of every kind against my estate are fully settled and paid, said trustees shall pay one per cent. of my annual net income to each of the following institutions of the city of Detroit, viz., St. Luke's Hospital, Harper Hospital, Home of the Friendless, and the Woman's Hospital and Foundlings' Home, to be used and applied solely for purposes as follows, viz., to fully defray the expenses so far as the same may go of one or more indigent and deserving persons as the officers of said institutions shall respectively select; of the remainder of the annual net income of my estate, if the same shall be but ten thousand dollars ($10,000.00) or less, my said trustees shall pay three-fifths (3-5) thereof in quarterly payments to my said wife during the term of her life, and two-fifths (2-5) thereof in quarterly payments to my said daughter during the term of her life, if the said remainder of my annual net income be over ten thousand dollars ($10,000.00) said trustees shall pay quarterly to my said wife during her lifetime at the rate of five thousand dollars ($5,000.00) per annum, and as much more as shall with said five thousand dollars ($5,000.00) equal one-third (1-3) of the net yearly income of my said estate, and pay quarterly to my said daughter, Ivey F. McGraw, during her lifetime at the rate of five thousand ($5,000.00) per annum, and as much more as shall with said five thousand dollars ($5,000.00) equal one-third (1-3) of the net income of my said estate, and until the final distribution of my estate as hereinafter provided shall continue the payments of the annuities to the said Elizabeth Ford, Mary Ann Williams, and James Henry Selden, in amounts and manner as above provided and in the event of the death of said Elizabeth Ford, the annuity payable to her shall be paid to her daughter Mary Ford, if living, and in the event of the death of said Mary Ann Williams the annuity payable to her shall be paid in equal shares to such of her daughters, Jane, Arvilla, Robie and Josephine as shall be then living.

"The above provisions in favor of my wife are intended to be in lieu of her power interest in my estate, and are to be received and accepted by her in lieu thereof and in full of all her claims against my said estate.

"The payments above provided to be paid out of the income of my estate to my said daughter Ivey F. shall be payable only to her or her legally constituted guardian, and shall in no event be assignable by her and an assignment by her of any portion of such income shall render null and void to that extent the provision of this will for the payment thereof to her, and the same as to the payments above provided to be made to the said James Henry Selden.

"Upon the death of my said wife said trustees out of the gross income of said estate shall pay the expenses of her funeral and burial in proper and fitting manner and of the inscription of her name upon the monument above provided for.

"Ninth. I hereby direct that my estate shall not be finally distributed until the death of both my said wife and my said daughter; and in case of the

death of my said daughter previous to the death of my said wife, then during the remainder of the life of my said wife the annuity hereinbefore provided for my said daughter shall be divided among her children if she leave any at her death, share and share alike.

"Tenth. Upon the death of both my said wife and my said daughter, and after the payment of all my said debts, my remaining estate, real and personal, shall be distributed by my said trustees as follows: The law books and library hereinbefore mentioned, with the accumulation thereof shall be turned over to such association or incorporation composed of attorneys at law of the city of Detroit as my said trustees or their successors shall determine; if such association or incorporation shall then exist, or shall then organize, which shall be willing to accept the same and to maintain and keep up said library separate from any other law library, under and by name of the McGraw Library, for the use and benefit of the members of such association, and such other attorneys at law of the said city as they shall admit under reasonable regulations to the privileges of such library, and I hereby give and confer upon my said trustees, and their successors in office, at the close of said trust, full power and authority in their discretion to name and appoint the beneficiary to take and receive this legacy and to carry out its purposes as above suggested.

"Of the residue of said estate I give, devise and bequeath one per cent. thereof to each of the following institutions of the city of Detroit, viz., St. Luke's Hospital, Harper Hospital, Home of the Friendless and Woman's Hospital and Foundlings' Home, and of the remainder of said estate I give, devise and bequeath one-third (1-3) thereof to the children born in lawful wedlock of my said daughter Ivey F. if any who shall then be living, in equal shares, the shares of any deceased child going by right of representation to its children, if any of them living, and the residue of my estate shall be distributed as follows: One-third (1-3) thereof to said Homer McGraw, his heirs and assigns forever, and the remainder thereof shall be divided into five equal portions, one of which shall go to said Elizabeth Ford, if living, and if not living to her daughter Mary Ford; one to said Mary Ann Williams, if living, and if not living then in equal shares to such of her daughters, Jane, Arvilla, Robie and Josephine as shall then be living; one to William McGraw, son of my deceased brother Richard; one to William McGraw, son of my deceased brother Miles; one to Maggie Whipple and Corrine McGraw, daughters of my deceased brother William, and it is my further will that if any of the aforesaid final bequests shall fail for want of legatees, as above specified, to take the same at the time of final distribution, such bequest or bequests shall be divided among the other legatees as above specified; who shall then be living, in the same proportions as near as may be, as hereinbefore provided.

"Eleventh. I desire that said trusteeship of my estate shall be kept full and I therefore authorize the survivors or survivor of my said trustees, in case of a vacancy by the death, incapacity, removal or resignation of either of their number, to select and appoint his successor, and from the following persons if they shall then be living, William H. Brace, Samuel R. Mumford, and Reuben Kempf, who shall be invested with the same powers and authority to act in all matters pertaining to my estate as the several trustees hereinbefore named.

"Twelfth. I hereby nominate and appoint the aforesaid Homer McGraw, Hoyt Post and Charles E. Swales and the survivor or survivors of them to be the executors of this my last will and testament."

The first codicil, made August 6, 1892, was in these words: "Whereas by my aforesaid will in item first thereof I did provide that my trustees named therein should out of the proceeds of sales therein provided for and from the income of said estate, until all debts and claims against my estate are fully settled and paid, pay quarterly to my beloved wife, Sarah I. McGraw, at the rate of three thousand dollars ($3,000.00) per annum for her support and maintenance; now I desire to increase said amount to five thousand dollars ($5,000.00) per annum and provide that my said trustee shall, out of said proceeds of sales and from said income, until all debts and claims against my estate are fully settled and paid, pay quarterly to my said wife at the rate of

five thousand dollars ($5,000.00) instead of three thousand dollars ($3,000.00) per annum for her support and maintenance; and in all other respects I hereby ratify and confirm my said will as above written."

The second codicil, made August 15, 1896, was as follows: "Whereas, by paragraph numbered seven of my said will, it is provided among other things that after the death of my wife my daughter Ivey may occupy and use my homestead and household goods, if not sold during her lifetime, free of rent or charge, and that at the death of both my said wife and daughter said homestead, if not sold, shall go to the living children of said daughter and to the children, if any then living, of any deceased child by right of representation; and whereas since making said will I have assisted my said daughter to build her a home elsewhere. Now I desire to provide that upon the death of my said wife said homestead shall at once fall into and become a part of the residuum of my estate to be treated and disposed of as is in said will provided for such residuum, and that thereafter the consent and advice of said daughter shall not be necessary to a sale of said homestead, and in all other respects I hereby ratify and confirm my said will as above written."

The present suit in equity was instituted on the 24th day of August, 1906.

After stating the relationship of the several individual defendants to the decedent, and after indicating the contentions of the parties, as above quoted from the twenty-ninth paragraph of the bill, it is alleged:

"(30) That the said Thomas McGraw died leaving debts and liabilities unpaid, which have become and are claims and liabilities against his estate, and that the said claims and liabilities have not yet all been paid, and there is not sufficient personal estate of said estate to pay the same.

"(31) That immediately upon the appointment and qualification of said Homer McGraw, Hoyt Post, and Charles E. Swales as executors of said last will and testament, under the provisions of section 9354 of volume 3 of the Compiled Laws of Michigan for the year 1897, said executors entered into possession of said McGraw building and of the lots upon which the same is situated.

"(32) That since the death of said Charles E. Swales said Homer McGraw and Hoyt Post have, in their capacity as executors of said last will and testament, continued in possession of said McGraw building and the lots upon which the same is situated.

"(33) That said Hoyt Post and Homer McGraw in their capacity as trustees under said last will and testament are not in possession of said McGraw building and the lots upon which the same is situated or any part thereof.

"(34) That the value of your orator's estate in fee simple in an undivided one-thirtieth part of said McGraw building and the lots upon which the same is located, is more than $2,000.

"(35) That for the purpose of recovering possession of your orator's estate in said McGraw building and the lots upon which the same is located, your orator commenced an action at law in ejectment on August 30, 1905, in the Circuit Court of the United States for the Eastern District of Michigan, Southern Division, against said Homer McGraw and Hoyt Post as defendants.

"(36) That the defendants in said ejectment suit, Homer McGraw and Hoyt Post, claim to be and are in possession of said McGraw building, and the lots upon which the same is located, in their capacity as executors of said last will and testament.

"(37) That inasmuch as the debts and liabilities of the estate of said Thomas McGraw are still unpaid, and there is not personal estate amply sufficient for the payment of the same, said Homer McGraw and Hoyt Post are properly in possession of said McGraw building and the lots upon which the same is located, and your orator can have no relief and is utterly without remedy in a court of law.

"(38) That the defendants not only claim that said Homer McGraw and Hoyt Post, as trustees under the last will and testament of said Thomas McGraw, have a present estate in said McGraw building and the lots upon which the same is located, but also claim that said Ivey McGraw Serrill is the daughter and one of the heirs at law of said Thomas McGraw, and for these reasons that your orator is not an heir at law of said Thomas McGraw under the

laws of the state of Michigan, and has no present interest in said McGraw building and the lots upon which the same is located.

"(39) That by reason of the claims aforesaid your orator's estate in said McGraw building and the lots upon which the same is located is clouded, and inasmuch as none of the defendants herein in the capacity in which they are made defendants are in possession of said McGraw building, and the lots upon which the same is located, your orator has no remedy in the premises except in equity.

"(40) That the heirs at law other than your orator of said Thomas McGraw are very numerous and cannot without manifest inconvenience and oppressive delays be all brought before the court in this suit.

"(41) That the heirs at law of said Thomas McGraw, other than your orator and the beneficiaries under said last will and testament who have not been made defendants herein, are proper parties to the suit, but cannot be made parties by reason of some of them being out of the jurisdiction of the court, and some of them being residents of the state of Michigan and interested; if at all interested, on the same side of the controversy as your orator, whereby their joinder would oust the jurisdiction of the court, but said other heirs at law and beneficiaries are not indispensable parties to the suit, inasmuch as they are either represented by the trustees aforesaid or are not affected thereby to their prejudice, and are not interested in your orator's undivided estate in the property aforesaid."

The relief sought by the bill is as follows:

"First. That the last will and testament and codicils thereto of Thomas McGraw, deceased, may be construed by this honorable court.

"Second. That this honorable court may by its decree so construe the last will and testament and the codicils thereto of Thomas McGraw as to find that the building known as the McGraw building, and the lots upon which the same is situated are not disposed of by said last will and testament and the codicils thereto, and that your orator has an estate in fee simple in an undivided one-thirtieth (1-30) part thereof.

"Third. That the cloud upon the title of your orator to an estate in fee simple in an undivided one-thirtieth part of the McGraw building and the lots upon which the same is located, caused by the claims of the defendants, may be removed and your orator decreed to have the estate aforesaid, free, clear, and unincumbered by reason of the claims aforesaid.

"Fourth. And that your orator may have such further, other, or different relief in the premises as the nature of the circumstances of the case may require."

There were demurrers to the bill which make it necessary to inquire whether the grounds upon which the plaintiff claims relief can be sustained. The case has been argued and submitted to the court upon these demurrers.

Mr. Justice Harlan, after stating the case as above, delivered the opinion of the court:

Learned counsel referred to the general rules which control in the construction of wills, and the duty of the court to give effect to the intention of the testator. There can be no room for dispute as to what those rules are. Chief Justice Marshall, in Finlay v. King's Lessee, 3 Pet. 346, 7 L. Ed. 701, said: "The intent of the testator is the cardinal rule in the construction of wills; and if that intent can be clearly perceived and is not contrary to some positive rule of law, it must prevail; although in giving effect to it some words should be rejected or so restrained in their application as to materially change the literal meaning of the particular sentence." Such is the recognized rule in Michigan; for, in Eyer v. Beck, 70 Mich. 180, 38 N. W. 20, the Supreme Court of this state, speaking by Mr. Justice Campbell, said that the cardinal principle of interpretation of wills was to carry out the intention of the testator, if it is lawful, and if it can be discovered. The principle is more fully expressed in Foster v. Stevens' Ex'r, 146 Mich. 131, 109 N. W. 265, where the court said: "In the construction of a will the first duty of a court is to ascertain the intention of the testator. Such intention is to be ascertained from the whole will interpreted with reference to the obvious or manifest object of

the testator. All parts of the instrument must be construed in relation to each other so as to give meaning and effect to every clause and phrase and, if possible, from one consistent whole, every word receiving its natural and appropriate meaning." Cummings v. Corey, 58 Mich. 494, 25 N. W. 481; Rock River Paper Mill Co. v. Fisk, 47 Mich. 212, 10 N. W. 344. All the authorities agree that in ascertaining the intention of the testator all the provisions of his will should be examined, so as to ascertain his general purpose, and unless the plain import of the words demands otherwise they should be so construed as to be consistent, each one with all the others and not in violation of law, statutory or general.

Again, it is well settled, as said in Given v. Hilton, 95 U. S. 591, 594, 24 L. Ed. 458, that "no presumption of an intent to die intestate as to any part of his property is allowable when the words of a testator's will may fairly carry the whole (Stehman, etc., v. Stehman, 1 Watts [Pa.] 466)," and that "the law prefers a construction which will prevent a partial intestacy to one that will permit it, if such a construction may reasonably be given (Vernon v. Vernon, 53 N. Y. 351)." Regarding substance rather than form, the Supreme Court of Michigan has said that "all intendments must be made to prevent a partial intestacy." Toms v. Williams, 41 Mich. 552, 2 N. W. 814. See, also, Bailey v. Bailey, 25 Mich. 185.

The present suit, as we have seen, proceeds upon the ground, primarily, that the McGraw building and the lots appurtenant thereto were not effectively disposed of by the will of Thomas McGraw, and as to that property it must be taken that he died intestate, in which event the complainant has an estate in fee in an undivided one-thirtieth part thereof. Certain it is that the testator did not intend to die intestate as to the McGraw building and the lots on which it is situated. In reference to that particular property, his purpose evidently was that after the death of the wife and daughter it should pass from the trustees to an association or incorporated body, to be selected by them, which should maintain and keep up the law library in it for the use of attorneys in Detroit. We find it impossible to reach any other conclusion. In the first item of the will the testator gives, devises and bequeaths, to certain named parties and their survivors or survivor and successors, "all" his property, real, personal and mixed, "wherever the same may be situated," in trust, for certain uses and purposes, and subject to certain conditions; and they were directed to take possession "of all of said estate," have the control, care, and management thereof, with full power and authority, at their discretion, to sell, dispose of, and convey in fee simple "any and all of said estate," excepting the McGraw building and the lots on which that building was situated, and except, also, the testator's homestead, household goods, and furniture. But of the proceeds of such sales and the income of the estate the trustees were directed, until all debts and claims against the estate were fully settled, to pay certain amounts quarterly to the testator's wife and daughter, and also certain amounts to his sisters and a stepson if they survived him; also, to expend a specified sum per annum in the purchase of law books for the library in the McGraw building, pay the rent of a church pew, and the taxes and cost of keeping in repair the homestead and the McGraw building.

Then, in the seventh item of the will, the testator empowered the trustees, in certain contingencies, during the lifetime of his wife, or after her death, with the consent of the daughter, to sell and convey the homestead, in which case the proceeds were to fall into and become part of the residuum of the estate. Other parts of the will bearing more or less on the particular point now under consideration are items 9 and 10, by one of which the testator directed that his estate should not be finally distributed until the death of his wife and daughter, and by the other that upon the death of the wife and daughter, and after the payment of all debts, the testator's remaining estate, real and personal, should be distributed in a prescribed mode. The tenth item of the will then gives, devises, and bequeaths the "residue" and "remainder" of the estate in certain proportions to specified persons and corporations.

These provisions, in connection with others in the will, leave no doubt in our minds that the testator intended to dispose of his entire estate, and not to die intestate as to any part of it.

But the plaintiff contends that the will makes a disposition of the McGraw building which is void under the statutes of Michigan. The statutes here referred to (Comp. Laws) are as follows:

"(8796) Sec. 14. Every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed in this chapter; such power of alienation is suspended when there are no persons in being, by whom an absolute fee in possession can be conveyed.

"(8797) Sec. 15. The absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of two lives in being at the creation of the estate, except in the single case mentioned in the next section."

The exception in the latter section is of no relevancy here.

The general contention of the plaintiff is that the provisions of the will amount to a prohibition, expressed or implied, of the "alienation" of the McGraw building during a period of time not based on lives in being at the date of the creation of the estate. And that contention rests principally on those clauses directing that the estate shall not be finally distributed except upon the death of both the wife and daughter, and after the payment of the testator's debts. Items 9 and 10. Thus, it is argued, the alienation of that estate is suspended not only during the lives of the wife and daughter, but must await the payment of debts which might not occur until long after the death of the wife and daughter. We cannot accept that view. If the testator had given no specific direction for the payment of debts, his estate would still have been charged with such debts; for the statutes of Michigan provide that "all the estate of the testator, real and personal, shall be liable to be disposed of for the payment of his debts, and the expense of administering his estate." 3 Comp. Laws Mich. § 9289. The existence, under the statute, of a lien for creditors upon the estate of deceased persons is well established by judicial decisions. Lafferty v. People's Savings Bank, 76 Mich. 35, 51, 43 N. W. 34, and authorities there cited. The direction, therefore, in the will not to finally "distribute" the estate until the debts were paid, should be interpreted to mean nothing more than what the law required as to payment of debts. We cannot agree that the will created a separate, specific, independent trust for the payment of debts to continue, if necessary, beyond the lives of the wife and daughter. If the will were so construed, there would be some ground to contend, as to the McGraw building and lots, that the power of "alienation" had been suspended beyond the term of two lives in being at the date of the creation of the estate. State v. Holmes, 115 Mich. 456, 73 N. W. 548; Casgrain v. Hammond, 134 Mich. 419, 96 N. W. 510, 104 Am. St. Rep. 610. But we do not so construe the will. In effect it provided that the estate created was to be enjoyed after the death of the wife and daughter, subject to the payment of any debts legally chargeable upon it. That is, the words "after the payment of all my said debts" should be held to mean nothing more than if the testator had said, in terms, that the property devised could be enjoyed by the beneficiary after the death of the wife and daughter, "subject to the payment of all my said debts." We accept that view. Sound reason, we think, supports this view, and it is sustained by many authorities. We will refer to some of them.

A leading case is that of Jones v. Habersham, 107 U. S. 174, 176, 2 Sup. Ct. 336, 27 L. Ed. 401. It was sought by the plaintiffs in that case to have certain devises and bequests in a will adjudged to be void, and a resulting trust declared in their favor. The first question considered related to the following clause of the will: "Twenty-Second. It is my wish, and I hereby so direct, that none of the legacies, bequests, and devises in any of the clauses of this my will shall be executed or take effect until the building and other improvements on the lot on the corner of Gaston and Whittaker streets, and known as the Hodgson Memorial Hall, which I have conveyed in trust to the Georgia Historical Society, shall be completed and entirely paid for out of my estate." The contention was that all the devises and bequests were within the rule against perpetuities by which every devise or bequest is void, which may by possibility not take effect within a life or lives in being and 21 years afterwards. The court said: "The bill, which was filed nearly four years after the death of the testatrix, alleges, and the demurrer admits, that the building and other improvements referred to were in course of construction at

the time of her death, but were not completed until many months thereafter, but whether they were yet entirely paid for the plaintiffs were not certainly informed, and that, if not paid for, it was the only debt known to them, now existing against the estate. Reading the twenty-second clause in connection with the other parts of the will, and in the light of the attending facts, it is quite clear that the words 'take effect' are used by the testatrix as synonymous with or equivalent to the word 'executed,' with which they are coupled, and not as signifying that the devises and bequests shall not vest immediately, but only that they shall not be paid or carried out until the debt contracted by the testatrix for the construction of the Hodgson Memorial Hall shall have been paid out of her estate. Each devise and bequest is present and immediate in form, introduced by the words 'I give, devise, and bequeath.' The bill shows that the building and improvements referred to were, at the time of the death of the testatrix, in the course of construction, and so far advanced that they were actually completed within some months afterwards, so that the probable cost must have been capable of estimation at the time of the making of the will. The twenty-second clause is but a declaration of what the law would require, that the debt of the testatrix for the construction of the memorial hall must be first paid out of her estate before her devisees and legatees receive any benefit therefrom."

In Treadwell v. Cordis, 5 Gray (Mass.) 341, we have the case of a will which made certain bequests and legacies, and provided, "and the rest, residue and remainder of the testator's estate, real, personal and mixed, not before disposed of, after payment of my just debts, funeral charges and charges of settling my estate, as well as the charges of my executors. * * * I give, devise and bequeath to my executors" in trust, etc. The Supreme Judicial Court of Massachusetts said: "The first and principal question upon the construction of this will is: How is this residue to be formed and ascertained, of what it shall consist, and in reference to what time it shall be considered to be made? (1) As to the first branch of this question, it appears to us that this 'residue' is to consist of the whole of the real and personal property which the testator leaves, subject to certain deductions, to be made by operation of law, or by direction of the testator. The executors are to administer the estate according to law, and for that purpose the first charge upon the property in their hands is for the payment of debts and charges on the estate; and to this they are liable whether the testator so directs or not. But in the present case he does direct that all debts and charges shall be deducted. There is also to be deducted that part of his estate 'otherwise disposed of' by the same will. * * * (3) The next material question is, at what time this residue must be deemed to be formed and established; and, though this has been already alluded to, it may be proper to add something further. We are of the opinion that this residue must be considered as formed at the time of the decease of the testator. He gives this residue, both of the real and personal estate, to the executors—the real estate in fee, the personal not subject to any condition precedent—so that the whole property vests in them by relation from the time of the decease of the testator, subject, of course, to charges upon it created by law, and others imposed by the will. The real estate is upon trust, to pay the net amount of the rents and profits 'as soon as received': the personal upon trust, to pay all the dividends and income subject to charges 'as fast as they shall be received.' Now, as owners of the real and personal estate by the bequests, they are entitled to receive, and must actually receive, rents, dividends, and income; and they become accountable for such income to those entitled to it, from the decease of the testator. It is no objection to this view, we think, that the testator uses the term 'the residue of my estate, after the payment of my just debts.' The term 'after' does not always designate the time at which one thing is to be done in reference to something else; but it expresses the relative priority and subordination of one claim to another in matter of right. So we think it does here; the residue is to be formed subject to the payment of debts and charges, although they may be actually paid afterwards. And so of all other receipts and payments to be taken into consideration, as ascertaining the 'residue'; they cannot be made at the time of the decease; some time must be required to prove the will, and do many other things; but they may be charged and credited as of that time, and so by an

easy computation show the residue ascertained as of that time, for the purpose of adjusting the relative rights of those entitled to the income, and those entitled to a distribution of the capital."

In Haug v. Schumacher, 166 N. Y. 506, 60 N. E. 245, the words in a will which were construed, "immediately after the death of my said wife and the death of my said two sons * * * I give, devise, and bequeath all of my estate, real and personal," to grandchildren, were held to create future estates that vested at the time of the testator's death in the grandchildren in being at that time. The court quoted from the previous case of Corse v. Chapman, 153 N. Y. 466, 47 N. E. 812, the following words: "It is a well-settled principle of construction that the law favors the vesting of estates, and that the words 'from' and 'after,' or like expressions, as relating to the termination of the life estate, do not postpone the vesting of the estates in remainder until the death of the life tenant, but rather refer to the period when the remaindermen would become entitled to the estates in possession."

In Lamb v. Lamb, 11 Pick. (Mass.) 378, the court construing the words, "It is my will that after settling my estate my wife have the interest of the remainder of my personal estate," said: " 'After settling my estate' seems equivalent to subject to the settlement. The word 'after' does not always nor necessarily refer to time, but to order in point of right or enjoyment."

We deem it unnecessary to make other citations of authorities, and hold: (1) That the will of the testator did not create a distinct trust for the payment of his debts, which should continue beyond the lives of the wife and daughter, and until such debts were actually paid. (2) That the will did not, in violation of the statute of Michigan, suspend the power of alienation beyond the continuance of two lives in being. (3) That the testator did not die intestate as to the McGraw building and the lots upon which it is located. (4) That the grounds upon which the plaintiff seeks to establish an interest in the McGraw building and the lots on which it is situated cannot be upheld.

These conclusions render it unnecessary to consider other questions discussed by counsel.

The demurrers must be sustained, and the bill dismissed.

It is so ordered.

Henry B. Graves, for appellant.

Orla B. Taylor, for appellee Ivey McGraw Serrill.

James Oxtoby and Hoyt Post, for trustees.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

PER CURIAM. Bill to remove a cloud cast upon the title to certain property to which complainant claims title as heir at law as not validly claimed under the will of Thos. McGraw, though claimed thereunder by some of the defendants. The cause came on to be heard upon demurrers to the bill, which were sustained, and the bill dismissed by the court below.

This court upon full consideration sees no error in the decree below, and is content to affirm upon the opinion of Circuit Justice Harlan, who heard the case below in connection with District Judge Swan.

Judge LURTON participated in the hearing and decision of this case, while a member of this court.