## ALBERS BROS. MILLING CO. v. DRUMHELLER, Collector of Customs, et al.

(District Court, W. D. Washington, N. D.   March, 1922.)

No. 214.

Carriers ⊙⇒58—Indorsee of bill of lading holds title as against purchaser from one in wrongful possession.

> The payee of a draft drawn against a shipment of merchandise consigned to order of the consignor, on which is indorsed "Documents against payment," and to which was attached the bill of lading indorsed to such payee, *held* to hold title to the merchandise as security until payment of the draft and surrender of the bill of lading, which title was not divested by a sale and delivery of the merchandise to a bona fide purchaser for value, after acceptance of the draft by the drawee, who obtained possession without authority or knowledge of the payee.

In Equity. Suit by the Albers Bros. Milling Company against Roscoe Drumheller, Collector of Customs, and the Exporters' & Importers' Warehouse Company of Seattle. Decree of intervener.

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Farrell, Kane & Stratton, of Seattle, Wash., for plaintiff.
Charles H. Hartge, of Seattle, Wash., for defendants.
Bronson, Robinson & Jones, of Seattle, Wash., for intervener.

NETERER, District Judge. This action against Drumheller has on stipulation been dismissed, and the issue to be determined is between the plaintiff and intervener, who, it is stipulated, are corporate entities doing business in this district, and that, on December 4, 1919, Rogers, Brown & Co. imported from Japan to Seattle 1,200 bags of peas from Kaisi & Co., consignor and shipper over the line of Mikami & Co., operator of the steamship Eastern Moon; that the peas were shipped and consigned to the order of Kaisi & Co., Limited, with instruction to "notify Rogers, Brown & Co." At the time of shipment Kaisi & Co. drew its draft on Rogers, Brown & Co. in favor of the intervener for the sum of $9,072, as a part of the purchase price of the peas, and Kaisi & Co., for the purpose of transferring all of its interest in the bill of lading and peas, indorsed and transferred to the intervener the bill of lading covering the shipment, and thereupon forwarded the bill of lading, with draft attached, on the face of which is indorsed "Documents against payment," to the intervener, and were delivered to such intervener on the 26th of December, 1919, who since said time has been the owner and in possession thereof; that the draft was presented to Rogers, Brown & Co., and accepted December 26, 1919, payable on March 25, 1920. On January 4, 1920, the peas arrived at the port of Seattle, and on that date were unloaded by the carrier on the dock of the East Waterway Dock & Warehouse Company, a public terminal warehouse, where the importers in the usual course of business received their importations. On the 8th of January the customs house broker, an agent of Rogers, Brown & Co., without objection of the carrier, made a warehouse entry for the warehousing of the peas in bonded storage, and obtained customs permit authorizing the transfer of the peas from the dock to the public bonded warehouse, and to there deposit them for warehouse and bonded storage. At the time of the entry no bill of lading was produced, a bond being accepted by the collector from Rogers, Brown & Co., conditioned for the production of the bill of lading within 90 days from the date of such bond.

The respondent testifies that he did not know that the peas were entered for warehousing by Rogers, Brown & Co., and did not know that a bond had been posted to produce the bill of lading. On January 21, Rogers, Brown & Co. obtained a switching permit, authorizing the use of cars for transfer of the peas from the dock of said East Waterway Warehouse Company, to Exporters' & Importers' Warehouse Company, and directed a joint letter to the East Waterway Warehouse Company and Exporters' & Importers' Warehouse Company, advising what had been done and directed the Exporters' & Importers' Warehouse Company to issue to it a negotiable warehouse receipt on arrival of goods. On the 23d of January, pursuant to the permit and directions, the peas were without objection transferred in sealed cars, and under the supervision of the inspector of customs, to the public

bonded warehouse, and in conformity with provisions of the United States customs laws deposited in bonded storage under the supervision of customs inspectors, and the Warehouse Company without objection issued its negotiable warehouse receipt for the peas. On the 22d of March following the plaintiff purchased the peas and paid to Rogers, Brown & Co. $7,639.65, in good faith, and without notice of fraud or mistake or irregularity in delivering the peas without the bill of lading, and without notice that they were consigned to the order of the consignor, Rogers, Brown & Co., indorsed and delivered the negotiable warehouse receipt to the plaintiff. Upon the maturity of the draft, March 25, the time was extended to May 25.

Prior to the issuance of the negotiable warehouse receipt Rogers, Brown & Co., paid all previous storage charges. The plaintiff at no time had any notice or knowledge of condition, or the relation of the peas, bill of lading, or the draft. June 7, 1920, a receiver was appointed and took charge of Rogers, Brown & Co.'s assets. The intervener took no steps in the matter until it intervened in this case, except on the 3d of July, 1920, it notified the collector of customs that it claimed right and title to the possession of the peas. On September 7, 1920, plaintiff demanded delivery of the peas from the collector of customs, basing its right upon its warehouse receipt, and at the time offered to pay all United States customs duties and charges against the peas, due and payable, but delivery was refused. By stipulation of the parties the peas have been sold and the money deposited in the registry of the court, less the custom charges and expense of sale.

It is contended by the intervener that by the bill of lading, accompanied by a time draft, upon acceptance of the draft, the title passed to Rogers, Brown & Co., and seeks to support such from National Bank v. Merchants Bank, 91 U. S. 92, 23 L. Ed. 208; Moore et al. v. National Bank, 44 La. Ann. 99, 10 South. 407, 32 Am. St. Rep. 332. In the cases cited a bill of lading of merchandise deliverable to order was attached to time draft without special instructions, and upon acceptance of the draft the bill of lading was surrendered, and the court said:

"If the absence of specific instructions left it uncertain what was to be done, further than to procure acceptances of the drafts, and to receive payment when they fell due, it was the fault of the principal. If the consequence was a loss, it would be most unjust to cast the loss on the agent."

In the same decision, on page 104 of 91 U. S. (23 L. Ed. 208), the court says:

"We feel justified in saying that, in our opinion, no respectable case can be found in which it has been decided that when a time draft has been drawn against a consignment to order, and has been forwarded to an agent for collection with the bill of lading attached, without any further instructions, the agent is not justified in delivering over the bill of lading on the acceptance of the draft."

The issue determined by the court in Moore et al. v. National Bank, supra, was that in absence of instructions the collecting agent was authorized to infer that the warehouse receipts were annexed to the draft to secure its acceptance, and were to be surrendered on acceptance. N. S. R. v. Barnes, 104 N. C. 25, 10 S. E. 83, 5 L. R. A. 611, has no re-

lation to the issue here, since the issue in that case was negligence on the part of the carrier to deliver to the consignee goods upon which freight charges were not paid, and the company having thus delivered the goods could not enforce its lien for freight charges against the goods in the hands of a bona fide purchaser. The intervener is not the carrier, but stands in the place of the consignor. Upon the face of the draft is indorsed, "Documents against payment," to which are attached documents per steamship Eastern Moon, which were not surrendered at the time of acceptance, or at all. The Supreme Court in Dows v. National Bank, 91 U. S. 618, 23 L. Ed. 214, held that a bank discounting a draft and receiving therewith, deliverable to its order a bill of lading of the goods against which the draft was drawn, acquires a special property therein, and has a right to hold the goods as security for the acceptance and payment of the draft. At page 637 of 91 U. S. (23 L. Ed. 214) the court says:

"The defendants could acquire no title, or even lien, from a tortious possessor; however innocent they may have been (and they were undoubtedly innocent of any attempt to do wrong), they could not attain ownership of the wheat from any other than the owner. The owner of personal property cannot be divested of his ownership without his consent, except by process of law."

It is shown in this case that interest of the vendor in the goods covered by the bill of lading was transferred to intervener for the purpose of securing the payment of the draft when due, and that it is now the owner and holder of such bill of lading, and from the draft and attached documents, and the established fact, the parties, no doubt, intended that the title and ownership of the property should remain in the vendor until the purchase price was paid. Canadian Northern Railway Co. v. Northern Mississippi Railway Co., 209 Fed. 758, 126 C. C. A. 482. Title to the property in issue never passed to Rogers, Brown & Co., but vested in the intervener, and as owner it has the right to follow and reclaim them as it so elects. Nothing was done by the intervener which could mislead the plaintiff, or which did in any sense authorize a limited or special bailment, as in Dows v. National Bank, supra. Silence when it was not required to speak could not work an estoppel. Blanck v. Pioneer Mining Co., 93 Wash. 34, 159 Pac. 1080.

"To effect an estoppel must have operated as a fraud, must have been intended to mislead, and itself must have actually misled. The party keeping silent must have known, or had reasonable grounds for believing, that the other party would rely and act upon his silence. The burden of showing these things rests upon the party invoking the estoppel."

As between the plaintiff and intervener, the right of the intervener is clear. What enforceable right the plaintiff may have against other parties is not in issue before the court.