### RUDOLPH v SCHMALSTIG et

Ohio Common Pleas, Hamilton Co

Decided Sept 29, 1937

James A. McDonald, Cincinnati, and Charles E. Weber, Cincinnati, for plaintiff.

Adolph Richter, Cincinnati, and Kunkle & Kunkle, Cincinnati, for executors.

## OPINION

By GORMAN, J.

This is an action to construe the will of the late Charles Schmalstig of this county, who died on or about August 4, 1935, and whose will was admitted to probate in this county on August 29, 1935.

After directing the payment of his debts and funeral expenses in the fourth, fifth and sixth items of the will, be made twenty-one specific bequests in cash to various individuals and institutions. These bequests total $7,300 in amount. In the seventh item it is provided:

"It is my will that the legacies bequeathed in Items 4th, 5th, 6th sub-items or clauses a, b, c, d, e, f, g, h, i, j, k, l, m, n, o, p, q, r and s of said Item Sixth **shall be paid from income** received by my executors and **shall be paid at their convenience** and I hereby expressly provide that none of said legacies shall at any time bear interest."

After making several miscellaneous bequests and directions, the testator provided:

"Item Thirteenth: All the rest, residue and remainder of my estate of whatever kind, nature and description and wheresoever situated, I give, devise and bequeath to Julius Mathias Schmalstig and Charles Francis Blum, in trust however, for the uses and purposes in this my will stated in Items Fourteenth and Fifteenth hereof. Under the powers hereinafter given them, they shall keep the trust estate invested and make re-investments. They shall have, hold and manage the same for and during the natural lives of my nephews and nieces, namely, Julius Mathias Schmalstig, Emma Elizabeth Hughes, Gertrude Eleanora Mary Distel, Martha Clara Huelsmann, Carl William Schmalstig, Clara Annabella Tilly, Petranella Wilhelmina B. Chambers, Charles Francis Blum, Margaretha Marie Rudolph, Elsie Louisa Philomena Rudolph, Angelina Mary Josephine Amelia Schlueter, Carl Henry Rudolph and Francis Xavier Rudolph, living at my decease; and for and during the natural lives of their respective children and grandchildren living at my decease; and for and during the natural life of the longest liver of said nephews and nieces and said children and grandchildren living at my decease and for and

during the twenty-one (21) years next succeeding the death of such longest liver of them.

"Item Fourteenth: The income of the trust estate created in Item Thirteenth hereof during the term of said trust as in said Item fixed or to the termination of said trust by vote as herein authorized shall be used and applied as follows:

"Said trustee shall:

"(a) Pay all the expenses of the trust and a reasonable compensation to themselves for their services, which compensation shall be equally divided.

"(b) They shall next pay to my brother, George Schmalstig for and during his natural life the sum of One Hundred and Fifty ($150) Dollars each quarter of a year.

"(c) The remainder of the income shall be paid quarterly as follows:

"To Julius Mathias Schmalstig; to Emma Elizabeth Hughes; to Gertrude Eleanora Mary Distel; to Martha Clara Huelsmann; to Clara Annabella Tilly; to Petranella W. B. Chambers; to Charles Francis Blum; to Angelina Mary Josephine Schluter; to Carl Henry Rudolph and Carl William Schmalstig, each a two-twenty-eights (2/28) part thereof for and during their natural lives.

"To Margaretha Marie Rudolph; to Elsie L. O. Rudolph and Francis Xavier Rudolph, each a one-twenty eights (1/28) part thereof for and during their respective natural lives, but as each of these last three named hereafter become married, the share of each so marrying shall and is hereby increased for and during his or her natural life to a two-twenty-eighth (2/28) part instead of said one-twenty-eighth (1/28) part.

"To Anna Maria Schmalstig, widow of my deceased brother Julius J. Schmalstig, a two-twenty-eighth (2/28) part thereof during her natural life, to cease however, on her re-marriage.

"Should any of those above named entitled at any time to a two-twenty-eighth (2/28) part of said income (except said Anna Maria Schmalstig) die before me or after me, then such two-twenty-eighth (2/28) part shall pass for life to his or her respective descendant or descendants per stirpes and thereafter in succession for life as a descendant dies to his or her descendant or descendants per stirpes and in default of a descendant or descendants, such payment shall lapse.

"And it is my will that undistributed income at each quarter arising either by the division of the income into twenty-eight parts or by lapses, shall be distributed at the next quarterly distribution of income.

"Item Fifteenth: Should the trust created in Item Thirteenth hereof not terminate within forty (40) years from my death, then at the end of forty (40) years from my death, the persons then sharing in the distribution of the income of the trust estate excepting my brother George and Anna Maria Schmalstig, shall by vote determine whether the trust shall continue in force or shall stand terminated as of a fixed day and a majority vote shall be conclusive on all. Those incapacitated to vote by reason of non-age or mental incapacity shall be represented by their guardians. It is my will that on the last day of the trust as limited as to time in Item Thirteenth hereof, or by vote as in this item permitted, my said trustees shall pay and distribute the trust estate among my nephews and nieces of my blood living at the time of such distribution and the descendants then living of my nephews and nieces of my blood that are then deceased, such distribution to be per capita and not per stirpes. Provided, however, should my brother George and Anna Maria Schmalstig both or either be then living, then my said trustees shall retain a sufficient fund, the income of which will enable them to pay to my said brother, said One Hundred and Fifty ($150) dollars each quarter, which sum shall be paid her in lieu of such two-twenty-eighth (2/28) part of the income as hereinbefore directed to be paid to her. And as and when either of said two named dies, a distribution of so much of the fund as will not be required to be further kept to produce an income necessary to make the payments to the survivor of them shall be distributed among my nephews and nieces of my blood living at such death and to the descendants living at such death of my nephews and nieces of my blood that are then deceased, such distribution to be per capita and not per stirpes; and the remainder of the fund shall be distributed on the death of the survivor of said two among my nephews and nieces of my blood living at the death of such survivor and to the descendants living at the death of such survivor of my nephews and nieces of my blood that are then deceased, such distribution to be per capita and not per stirpes."

Julius Mathias Schmalstig and Charles F. Blum were appointed as executors under the will.

It is claimed in brief by the plaintiff, that because of the provisions of the seventh item, the provisions of the thirteenth item violate the rule against perpetuities in that there is a possibility that the legal title to the estate may not vest during lives in being and twenty-one years thereafter.

As to the seventh item it is contended that the payment of legacies out of income at the convenience of the executor imposes an implied trust upon the executors which may not terminate within the statutory period, and consequently the legal title to the residue mentioned in Items 13 may not vest in the trustees within the statutory period. It is likewise claimed that the provisions of Item 15 of the will give the power to the then beneficiaries to extend the period of trust beyond lives in being and twenty-one years thereafter.

The court will take up the second proposition first, as it will be easier to discuss the first if disposition is made of that contention. In so doing the court must assume naturally that the legal title vested in the trustees.

**Sec 10512-8, GC** provides as follows:

"No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest. All estates given in tail, by deed or will, in lands or tenements lying within this state, shall be and remain an absolute estate in fee simple to the issue of the first donee in tail. It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common law rule against perpetuities."

This section was adopted because the previous Ohio statute was difficult of interpretation and had caused confusion. See 3 Cincinnati Law Review 79.

The case of **Flowers v Metcalf, Exr., 4 O.O. 301**, decided by the Probate Court of Richland County, is the only reported case that we have found since the adoption of the statute. The corpus of the estate in that case was not bequeathed to any one, so the decision is of no value in determining the problem before the court.

The common law rule as stated by Gray, is that "no interest is good unless it must vest, if at all, not later than twenty-one years after a life in being at the creation of the interest." Gray's Rule Against Perpetuities, (3rd Ed.) §201.

The rule against perpetuities is not a rule of construction, but of law, and it is to be applied even if the accomplishment of the expressed intention of the testator is made impossible. Springfield Safe Deposit Co. v Ireland, (Massachusetts), 167 NE 261; 64 A.L.R. 1071; Bundy v United States Trust Co., 257 Mass. 72, 79; Odell v Odell, 10 Allen 1, 7. It is not sufficient that a future interest may, or probably will vest within the limits of the rule against perpetuities. Nor, on the other hand, is it necessary to call for the application of the rule, that it will probably or certainly vest beyond such limits. A possibility that it may do so is fatal to its validity. Ould v Washington Hospital, 95 U. S. 303, 313; Johnson v Preston, 226 Ill. 447; Patterson v Ellis, 11 Wend. 259; Graves v Graves, 94 N. J. Eq. 268.

The rule therefore is a limitation upon the right of every man to dispose of his property in any manner he sees fit, and specifically to prevent the inalienability of property. The rule is one which has reference to time and not to persons.

The single question to determine is whether the prescribed contingency or event may not arise until after the time allowed by law. If it may happen beyond the established time limits, unless there are alternative contingencies, it is void. It cannot be made good by subsequent events.

It is equally clear that the rule applies to trusts as to other estates. The violation of the rule when covered by a trust will not be tolerated. **Hoopert v Gugle**, 25 N.P. (N.S.) 516; O'Hare v Johnston, 273 Ill. 548; Sears v Putnam, 102 Mass. 5; Lovering v Worthington, 106 Mass. 86.

There is no objection to the thirteenth clause if it stood alone. It definitely provides for the trust to continue during lives in being and twenty-one years thereafter.

In the fifteenth clause, however, we find that should the trust not terminate within forty years from my death, then at the end of forty years from my death, "the persons then sharing in the distribution of the income of the trust estate, excepting my brother George and Anna Maria Schmalstig, shall by vote determine whether the trust shall continue in force or shall stand terminated as of a fixed day and a majority vote shall be conclusive on all."

In other words, if all the nieces and nephews are dead within nineteen years after testator's death, this provision would never be employed. Some may live more

than nineteen years. If they do, the beneficiaries must first decide whether the trust shall continue in force. That simply means that they shall determine whether it will continue as provided in the thirteenth item or not. The decision that it should continue would not violate the rule against perpetuities.

However, the beneficiaries have likewise the right to say that it "shall stand terminated as of a fixed day." As the court interprets these words, it gives the beneficiaries the power to fix any day in the future to terminate the trust. It is claimed the beneficiaries therefore might fix a day for ending the trust which would be beyond the period set forth by the rule.

Let us examine the effect of such a situation. The testator himself is not extending the period, but is giving to the recipients of the income, who are beneficiaries if the trust endures for forty years, the power so to do.

In the case of a power of sale to be made at the discretion of the trustees, it is possible the trustees may not effect the sale within the statutory period. It is said, however, that a court of equity can prevent the trustees from unduly prolonging the sale if the testator has absolutely directed that a sale be held. Consequently, such a power does not violate the rule. Robert v Corning, 89 N. Y. 225, 235; Shoemaker, Admrx. v Newman, 65 Fed (2nd) 208; Jarman on Wills, 799, 835, 837.

If, on the other hand, the power of sale is suspended indefinitely, it is void. Lewis; Law of Perpetuities, page 547. But it must be clearly borne in mind that the statute is opposed only to the suspension of the power of alienation, and not to the time of its actual exercise.

This will, as we said, creates a power in the beneficiaries to extend the trust beyond the forty year period. If Item 15 is read alone, it could be said that such power could be exercised so that the rule would be violated. As the court construes the provision in connection with the thirteenth item, it was the intention of the testator to shorten the period of the existence of the trust. He permitted the trustees to determine whether the trust should continue after forty years, or terminate it. The obvious intention was to terminate it within the statutory period.

It was said in Pulitzer v Livingston, 89 Me. 369:

"The owners of the equitable fee are by the express terms of the deeds entitled to call for a conveyance of the legal estate from the trustees and thereby to destroy and finally determine the trust. The power therefore, does not hang suspended over the fee like an unbarrable executory devise, but is subject to be barred and destroyed by the cestuis que trustent or any one of them. Beddle v Perkins, 4 Simons, 135; Wallis v Thurston, 10 Simons 225."

It might also be said that the presumption is that the instrument is valid, and the court will not assume its invalidity in the absence of proof. Kussam v McElligott, 280. Fed. 219; McGrew v McGrew, 176 Fed. 312; Woolfitt v Preston, 203 Mich. 502; Mee v Gordon, 187 N. Y. 400.

Now the question of whether a power is too remote depends in this case. upon the intention of the testator. The time of the exercise of the power by the beneficiaries is within the statutory period, but it is said that the beneficiaries may by their vote fix the date for termination beyond. that period.

If the beneficiaries should select a date for termination beyond the statutory period this court does not feel that a court of equity could treat the excess time as surplusage as was suggested in Barnum v Barnum, 26 Md. 119.

Nor can this court apply the rule that where there are two contingencies, one valid and one invalid that the former should prevail, and the latter be considered obsolete.

Rather from a standpoint of construing the language of the testator's will we regard the provisions of Item 15 as a definite attempt to shorten the period of the termination of the trust rather than to lengthen it. The power, therefore, is given the beneficiaries, if the trust is not terminated within forty years, to fix a day for its termination within the statutory period mentioned in the thirteenth item. After all in determining whether the rule is violated the intention and meaning of the entire will must first be ascertained. Morgan v Gronon, L. R. 16 Eq. 1; In Re Coulman, 30 Ch. D. 186; Gray, supra, §523, p. 428.

The conclusion of this court, therefore, is that the granting of this power to extend the trust gives them only the power to extend it beyond a forty year period within the limits fixed by the thirteenth item. At that time some of the children living at testator's death may be still living, or if all are dead the period of termination under the thirteenth item will be

definite, fixed and known. If all are dead the trust will end within twenty-one years after the last of the nephews and nieces have died, unless the beneficiaries under the fifteenth item shorten the period. If some are still living, while the period of termination, so far as a fixed date is concerned will be uncertain, the beneficiaries cannot fix a date beyond the statutory period. If they do then the period mentioned in the thirteenth item will control, as it was the obvious intention of the testator to shorten the trust rather than extend it.

Reading the 13th and 15th items together, the court is of the opinion that the trust would exist not only for the period mentioned in the thirteenth item, but likewise during the lives of George and Anna Maria Schmalstig.

We now come to the proposition as to whether the legal title to the corpus will necessarily vest in the trustees named in the thirteenth item within the legal period due to the provisions of the seventh item.

It is a most peculiar provision that legacies be paid solely out of income at the convenience of the executors, and without interest.

The clear intention of the testator was to permit the income to accumulate until there would be $7,300 for legacies. While the testator in the third item directs his debts be paid out of income, he likewise directs they can be paid from the sale of stocks and bonds. This direction is not mandatory, but purely advisory, in its nature, and his debts could be paid from the corpus of the estate.

As we view the provisions of this will, the first income receivable by the executors is to be set aside for the specific legatees mentioned in the fourth, fifth and sixth items. That becomes a definite charge upon the estate.

Prior to 1800, the only rule as to accumulations of income was that the period should not violate the rule against perpetuities, and the famous will of Peter Thellusson was upheld even though it permitted the income to accumulate for distribution for a long time. Thellusson v Woodford, 4 Ves. 227. In 1800 the so-called Thellusson Act. (Stat. 39 and 30 George III, Ch. 98) was adopted limiting the period for accumulations. The Thellusson Act was not part of the common law adopted in this country, and has only been enacted in principle in a few states.

In Ohio the entire income may be tied up in trust without paying it to any one provided that the final period of vesting or distribution does not violate the rule against perpetuities. 31 **Ohio Jur.**, p. 322.

The holding of this income for the specific legatees by the executors creates an implied trust. It is said in Perry on Trusts, 7th Ed., Vol. 1, p. 172-173:

"An executor is always a trustee of the personalty, and the jurisdiction of equity courts over trusts gives them a right to construe wills whenever necessary to guide a trustee. Whenever the duties imposed on the executors are active, and render possession of the estate reasonably necessary, they will be deemed trustee."

See also: Wager v Wager, 89 N. Y. 161; Ward v Ward, 105 N. Y. 68; 20 Harvard Law Rev. 151.

Here then we have a trust in the executors with specific legatees being beneficiaries with a vested interest. The question arises as to when this trust terminates and when the legal title in the corpus of the estate vests in Julius Mathias Schmalstig and Charles Francis Blum, or their successors named as trustees in the thirteenth item.

Counsel for the executors contends that it ends when the probate of the estate is completed, within a year or shortly thereafter. He claims that there is now sufficient income to pay the legacies, but the court in determining whether there is a violation of the rule against perpetuities cannot look to what has happened. The court must decide what may possibly happen.

If the contention of counsel is correct, then it is possible that during the administration period there may not be sufficient income to pay the specific legacies, and the bequests might fail in whole or in part. This would be clearly contrary to the testator's intention because he made specific bequests which are vested.

The trust in Item 13 could not legally last beyond the limitation imposed in said item. If it did continue forty years, under the will a majority of the beneficiaries could terminate it. If the trust imposed in the executors, who must have control of the entire corpus, endured beyond the period set forth in item thirteen, the legal title to the main trust created in that item would not vest in Julius Mathias Schmalstig and Charles Francis Blum as trustees or their successors within the statutory period.

It has been said that an estate devised to A and his heirs to begin from a day fifty years after the testator's death is too remote, although the event upon which it depends is certain to occur. So in this case, the accumulation of income for specific legatees creates an uncertain and future contingency. See Remsen: Preparation of Wills and Trusts, 2nd Ed., p. 214.

The principle is more aptly illustrated by an examination of the case of Matter of Mills, 107 Misc., 592, 176 N. Y. Supp. 883. In that case it was provided that the son was to receive the income from the estate until $50,000 was paid him, or in case of his death to his children living at the time of the testator's death. The court held that a gift of income from a trust fund until a specified aggregate sum shall have been paid, creates no illegal suspension of the absolute ownership where the trust fund from which the income so bequeathed is to be derived, will, by its terms, end within the statutory period. At p. 594 the court said:

"No question of the violation of the statute in relation to the suspension of the absolute ownership of the property arises as the trust from which the income bequeathed by the testatrix is derived was created under the will of another person and must terminate in accordance with the provisions of the will which created it."

The converse of these propositions must follow. Where there is no limitation upon the duration of the first trust, the legal title may never vest in the ultimate beneficiaries. The devisees of the corpus of the trust, after the expiration of the trust for the payment of legacies out of income, are the trustees named in Item 13. Under this will they may never secure title within the statutory period. (Compare Leonard v Burr, 18 N. Y. 96; Dean v Mumford, 102 Mich. 510; In Re Bewick (1911) 1 Ch. 116; Gray, supra, §201.)

The court therefore finds that the trust created and mentioned in Items 13, 14 and 15 cannot be administered because it is in violation of the rule against perpetuities as set forth in §10512-8, GC, since the legal title may never vest in the trustees.

So far as other bequests are concerned, as set forth in the first twelve items, they are valid.

What then is the effect of the invalidity of the trust?

Under such circumstances there is a resulting trust of the residue mentioned in Item 13 for the benefit of the heirs or next of kin of the testator. Thegenwell v Sydenham, (1814) 3 Dow 194. That is the holding where a trust was held to be too remote and absolute.

The court has had considerable reluctance in arriving at this conclusion, for if we looked only to the events occurring since the death of Charles Schmalstig, it is obvious this estate could be administered. The rule against perpetuities is well established in our law that if there is a possibility that the absolute power of alienation may be suspended beyond the statutory period by a contingency remote and uncertain, the gift fails.

It may be that the rule should be modified, or that we should fix a definite statutory period in which income may be accumulated. Those are of course matters which are for the consideration of the legislative branch of the government.

This is just another example of where rules relating to property have been made stringent so that the power of alienation will not be suspended indefinitely. The purpose of such law must be commended, but its rigidity in application in a case such as this has created a seeming injustice in frustrating the desire of the testator.

An entry may be presented holding that the provisions of Items 13, 14 and 15 of the will of Charles Schmalstig are void, and that a trust with reference to this residue results for the benefit of the heirs and next of kin.