## THOMAS G. SMITH v. ELIAS BLOCK.

Real estate was conveyed to C. for life, and after her death to her children by E., during the life of each of the children, and after their death to E. and to his heirs, *habendum* to C. during life, and after her death to the " said surviving children," and after the death of each of them to E. and his heirs. *Held :*

1. That the provision for the children was contingent upon their surviving their mother, and only such of the children as survived her took the estate.

2. That E. took a vested remainder in fee, subject to the intervening contingent estate of the children.

MOTION for leave to file a petition in error to reverse the judgment of the Superior Court of Cincinnati.

The plaintiff in error, who was the plaintiff below, claims to own an estate for life in an undivided interest in a parcel of real estate in the city of Cincinnati; and he brought the original action to recover possession thereof.

This estate for life he claims to derive from his deceased wife, under the first section of the statute of descents, as surviving husband.

His wife, Helen V. Smith, was the daughter of Catharine and Elijah Smith, and her title to the land in which the plaintiff claims a life estate, is sought to be derived from two deeds of conveyance.

The first of these deeds was executed September 1, 1846, by Helen McDowell; and the deed states that in consideration of two thousand dollars paid by Catharine Smith and Elijah Smith, the grantor conveys the whole of the lot or

parcel of lands to "Catharine Smith during her natural life, and after her death to the children of Elijah Smith and Catharine Smith, during the natural life of each of said children, and after their death, to said Elijah Smith in fee, and to his heirs and assigns forever."

The *habendum* clause is as follows: "To have and to hold the same to the said Catharine Smith during her natural life, and after her death, to the said surviving children of Elijah Smith and Catharine Smith, his wife; and after the death of each of said children, to said Elijah Smith in fee, and to his heirs and assigns forever."

At the date of this deed, Elijah Smith and Catharine Smith were husband and wife, and had then living five children, of whom Helen V., subsequently married to the plaintiff, was one.

In 1849, Elijah and Catharine were divorced; and on the 3d of June, 1852, for the nominal consideration of one dollar paid by Catharine Smith, Elijah executed a deed in terms conveying the premises to "Catharine Smith during her natural life, and after her death, to the children of Elijah and Catharine Smith, their heirs and assigns forever."

Helen V. Smith and the plaintiff were married January 1, 1855; and she died in July, 1857, intestate, leaving no issue surviving.

Between the time of her death and the making of the deed by Elijah Smith, two of the other children of Catharine and Elijah had died, intestate and without issue.

Catharine died November 10, 1870. Only two of the children survived her, viz., Charles M. Smith and Clarence E. Smith, both of whom are still living.

The defendant, Block, derives title to the premises by purchase, under an order of sale made by the court of common pleas, in a suit instituted in 1864, by Catharine, for the purpose. To this suit all the then surviving children were parties as well as Elijah Smith; but the plaintiff was not.

The foregoing statement contains all that is material to an understanding of the decision.

The superior court at special term rendered judgment for the defendant, which was afterward affirmed by the court in general term.

It is now sought to obtain the reversal of these judgments.

*Reuben Tyler*, for plaintiff in error, claimed that the plaintiff's title was based on the following propositions:

1. By the deed from Helen McDowell vested remainders were conveyed to the children of Elijah and Catharine Smith for their several lives, and remainder in fee to Elijah Smith; possession of the children after the death of their mother, and possession in Elijah Smith, upon the death of each child, of the share of such child, subject to the estate of Catharine Smith.

2. By the deed from Elijah Smith the life estates of the children became merged in the fee, so that the children became the owners of the fee as tenants in common, subject only to the life estate of their mother.

3. By the death of Helen G. Smith, intestate, without issue surviving her, her husband, the plaintiff, took a life estate in all ancestral real estate of which she was the owner at the time of her death, and became entitled to the possession of one-fourth of the premises described in the petition upon the death of Catharine Smith.

And for a definition of remainders referred to: 4 Kent, 202–206; 2 Blackstone, 168, 169; Fearne on Contingent Remainders, 216; 2 Washburne on Real Property, ch. 4, sec. 1, paragraphs 6, 9, 12, 15–17, 19.

And applying the law as laid down in the authorities referred to, he claimed that the deed from Helen McDowell conveyed estates as follows: 1. To Catharine Smith for her life; 2. To the children of Catharine and Elijah Smith " during the natural life of each of said children;" and 3. To Elijah Smith in fee.    The *event* upon which the remainders of the children were limited was the *death* of Cath-

arine Smith, which was *certain* to occur. The *events* upon-
which the remainder of Elijah Smith was limited were-
the *deaths* of each of the children, which were also *certain*
to occur. Both the children and Elijah Smith were in-
being, and ready and able to take the remainders given
them by the deed upon the termination of the preceding
particular estates. They had what the law says is the
characteristic which " distinguishes a vested from a con-
tingent remainder "—that is, the " *present capacity* of taking
*possession*," if the particular estate should terminate at any
time.

The remainders given by the deed correspond exactly to
the definition of *vested* remainders as laid down in the law,
and none of the *events* upon which they are limited are
*contingent*—that is, *may* or *may not* happen.

A vested remainder may be either a *present right* to *pres-
ent possession*, or *present right* to *future possession*. The re-
mainder conveyed by said deed from Helen McDowell to
Catharine Smith was a present right to *present possession;*
the remainders to the children and Elijah Smith were
*present rights* to *future* possession. They were all *vested* re-
mainders. All the parties, by virtue of said deed, became
the *owners* of a *present, vested* right and interest in said
premises. Catharine Smith's right was to *present* possession
and enjoyment; the rights of the others were to *future*
possession and enjoyment. At the time of the deed from
Elijah Smith, Catharine Smith was in possession, and was-
the owner of the *whole* premises for the term of her life.
Each one of the six children then living was the owner of
an equal undivided one-sixth of said premises for his or-
her life, subject to the life estate of their mother, and Elijah
Smith was the owner of the *fee* of said premises, subject to-
the life estate of Catharine Smith and said children. Upon
the death of any of the children before the death of Cath-
arine Smith, the interests of the surviving children would
not have been enlarged. A *life* estate could not survive its-
owner, but Elijah Smith would have taken, upon the death
of Catharine Smith, the one-*sixth* of the whole premises in-

fee simple, free from the preceding life estates, and the sur-
viving children would have been entitled each to his or her
one-*sixth* for his or her life.    And so, upon the death of
each child, after the death of Catharine Smith, Elijah Smith
would have come into possession of one-sixth more of said
premises.    In that way, the evident intent and purpose of
the deed from Helen McDowell would have been carried
out, and in no other way could it be accomplished.

But the deed from Elijah Smith in 1852, while all the
children were living, and each was the owner of a vested
life estate in the equal one-sixth of said premises, *united*
their life estates with the fee, and the *life estates* were then
and there swallowed up and merged in the *fee;* and *after*
the deed from Elijah Smith, each one of the children be-
came the owner of an equal undivided one-sixth part of
said premises in fee, subject only to the life estate of their
mother.    The life estates became *merged* in the fee, accord-
ing to the doctrine of law laid down in 2 Blackstone, 177.

The deed from Elijah Smith placed the title in precisely
the same condition as if the deed from Helen McDowell
had been to Catharine Smith for her life, and after her
death to the children of Elijah and Catharine Smith in fee
simple, except that in that event the property would not
have been *ancestral;* but the nature and character of the
title and interest held by the children would have been the
same.

The law under which plaintiff claims, as heir of his wife,
was passed April 17, 1857, and appears on page 501 of Swan
& Critchfield, and page 194 of volume 54 of Ohio Laws.
Two of the children having died unmarried, and intestate,
before the death of Helen V. Smith, left her the owner of
the equal undivided one-fourth in fee at the time of her
death, subject to the life estate of Catharine Smith.

I claim that it follows from the language of the deed of
Helen McDowell, and the law in reference to the subject of
remainders and merger, that by virtue of said deeds from
Helen McDowell and Elijah Smith, the six children living
in 1852 became the owners of the fee simple of said prem-

ises, as tenants in common, subject to life estate of Catharine Smith; that by the death of two of the children, leaving their brothers and sisters their heirs at law, the whole fee simple became vested in the four surviving children, before the death of plaintiff's wife, and that she was such owner at the time of her death, and that, as heir of his wife, plaintiff took a life estate in said undivided fourth of said premises, with right of *possession*, after the death of Catharine Smith, which occurred November 10, 1870.

At the time of the deed from Elijah Smith, six children were living. It was impossible then to know or say how many, if any, and who, among them all, would survive their mother. Their rights and interests at that time were *equal.* Any *one* or *all* of them *might* or might *not* survive their mother. In this *uncertainty*, the law regards *each* of them as the owner of an equal *vested* interest. This question is discussed and decided in *Jeffers* v. *Thompson*, 10 Ohio St. 101, and *Moore* v. *Lyons*, 25 Wendell, 119. As to meaning of "when," "after," see 25 Wendell, 144; 8 Barnwell & Cresswell, 231; 19 New York, 384.

The deed from Elijah Smith, made at the time that all of the children were owners of a *vested* and *equal* interest, gave to them each an equal interest, and vested in them *each* an equal undivided one-*sixth* in fee simple, subject to life estate of their mother, and the result is the same, so far as the plaintiff is concerned, as if the deed from Helen McDowell had been made to Catharine Smith for her life, and after her death to her children in fee simple. The effect to be given to the habendum clause in a deed is as follows:

1. If the language of the granting clause is vague, indefinite, or uncertain, the habendum clause may be referred to for explanation.

2. If the language of the habendum clause is inconsistent with or contradictory to the granting clause, it is to be disregarded. The granting clause controls.

Now, the language and meaning of the granting clause seems to me plain, clear, and easily understood, and there is no necessity of any reference to the habendum clause for

explanation. So it need not be examined in this case. But if there *is* any language in the habendum clause which justifies any claim to "*survivorship*," or to the doctrine that only the children who *survive* their mother are to take under the deed, such language is clearly inconsistent with and contradictory to the language of the granting clause. So all such language should be disregarded.

But there is nothing in the use of the word "surviving" in the habendum clause, which will justify or sustain the claim that it was the intent of the deed to limit the estate upon those children only who should survive their mother.

It will be noticed that the word "surviving" is limited and controlled in meaning by the word "*said*," which precedes it in the habendum clause. The term "*said surviving children*" means the *same children* mentioned before, viz., the children of Catharine and Elijah Smith, without any limitation—that is, *all* of them taken *separately*, as indicated by the word "*each*." Again, if any meaning at all is conveyed by the word "surviving," additional to the children named in the *granting* clause, it is important to consider the *time* to which it refers—whether to those "surviving" at the date of the deed, or at the death of Catharine Smith. I have not found any cases on the subject except such as arose upon the construction of the term in wills. It seems to be well-settled law that the word "surviving," in a will, refers to the death of the testator; that is, to the *time the instrument takes effect*. Applying the same principle in this case, the word "surviving" would refer to the time of the *date of the deed* from Helen McDowell; and the result would be precisely as claimed by me in the first part of my brief—each of the children taking a vested remainder at the time the deed was made from Helen McDowell.

*Joseph Abraham,* for defendant in error:

I contend that the plaintiff in error has no present possessory right to any part of the land; that during the lifetime of any of the surviving children of Elijah and Catharine Smith, they alone are entitled to the enjoyment of the whole estate,

and that only after the death of all of said surviving children, the right to possess said land belonged to Elijah Smith, the remainderman, and his assigns had the same rights only.

By the clear and unmistakable terms of the deed from Helen McDowell, an estate for life was given to Catharine Smith; secondly, a life estate jointly to such children of Elijah and Catharine Smith as should survive her, and to the survivor of such children so long as one child lived, and that only upon the death of all of said children did Elijah Smith and his grantees have the right to the land. After the death of all of said children a fee simple vested in Elijah Smith. The deed in this respect being clear and unambiguous, conveying to the surviving children the right to enjoy the *whole* estate, during the term of the life of the last survivor, there can exist no rule of law, or power, other than the voluntary act of the survivor, to deprive him of the right to enjoy the whole of the estate during such term. If the claim of the plaintiff herein could be sustained, it would deprive the survivors of such right, and would be a manifest violation of the plainest rights acquired by the deed.

As to the effect and uses of the *habendum* clause, see *Deering* v. *Long Wharf*, 25 Maine, 51; 3 Washburn on Real Property, 642, sec. 61; Ib. 644, sec. 63; *Berry* v. *Billings*, 44 Maine, 416; 2 Blackstone, 298.

As to the doctrine of merger, see *Simonton* v. *Gray*, 34 Maine, 50; *Myers* v. *Hewitt*, 16 Ohio, 453; 4 Kent Com. 99. Applying the principles of law, as laid down in these authorities, to the case at bar, it is evident that the doctrine of merger can have no application in this cause, for there could be no merger, because there was not a meeting of two estates in one person. The plaintiff is not the heir of his wife, a child having been born during wedlock. S. & C. 501, sec. 1.

*Victor Abraham,* also for defendant in error:

In the deed under examination, the benefit does not purport to be conferred on the children as individuals named,

but as survivors of a class, which indicates that an immediate vesting was not in contemplation or intended.  *Swinton* v. *Legare*, 2 McCord, 440, 590 ; *Myer* v. *Myer*, 2 McCord, 214 ; *Walker* v. *Johnson*, 70 N. C. 576.

It can not, it seems, be otherwise than that this deed granted to the children of Catharine Smith, as a class, a contingent estate in remainder, to become vested in those of the class who should survive her death, when her death occurred, being an estate for their lives, and after the death of all such surviving children the remainder in fee, to Elijah Smith.

In construing and determining the effect of the language in the *granting* and *habendum* clauses of the deed, I refer to the following decisions of rules of construction : *Mitchell* v. *Watson*, 3 Cranch, 242 ; *Higgins* v. *Wargatt*, 34 Maine, 305 ; *Pike* v. *Monroe*, 36 Maine, 309.

The possessory right to the property in controversy is in Elias Block.  *Olney* v. *Hull*, 21 Pick. 311 ; *Thompson* v. *Ludington*, 104 Mass. 103.

WHITE, J.   The claim of the plaintiff is, in substance, that each of the children of Catharine and Elijah Smith took, under the conveyance of Helen McDowell, a vested estate for life in the property conveyed ; and that on the subsequent conveyance to them by Elijah Smith of his interest, the estate of each became, under the doctrine of merger, enlarged into an estate in fee, subject only to the life estate of Catharine Smith.

This claim is founded on a misconception of the effect of the deed of Helen McDowell to Catharine Smith and the children.

Under this deed, Catharine Smith took an estate for her own life, and Elijah took a vested remainder in fee, subject to an intervening life estate in favor of such of the children as might survive their mother.

The children are provided for as a class, and it is only such of the class as survive the mother for whom provision is made.   If none of the children should survive the

mother the intervening estate would be destroyed, and the remainderman in fee would be let in to the possession immediately on the determination of the life estate of Catharine.

But if any of the class survive the mother, the survivors take the intervening estate, and thus postpone the remainderman in fee until the intervening estate is determined.

At the time of the conveyance of Helen McDowell, there was neither an immediate right of present possession to the property nor a present fixed right of future possession in either of the children.

During the life of the mother, the right of the children to the possession of the estate was uncertain, depending upon their surviving their mother, the right belonging only to such as might so survive.

It is the uncertainty of the *right* of enjoyment, and not the uncertainty of its actual enjoyment, which renders a remainder contingent. 4 Kent, *206.

Without, however, entering into a consideration of the refinements which sometimes distinguish vested from contingent remainders, it may be remarked that the present case comes clearly within the fourth class of contingent remainders, as laid down by Mr. Fearne.

This class is thus defined by that writer: "Where the person to whom the remainder is limited is not yet ascertained, or not yet in being." 1 Fearne, *5; 4 Kent, *207.

Whether, in the present case, any of the children, and if any, which of them, would survive their mother, could not be ascertained until her death.

That it was only such of the children as might survive their mother who were intended to take, is apparent from the language of the *habendum*, as well as from the nature of the provisions made for the children. The nature of the provision was such that it could only subsist during the life or lives of such of them as might thus survive.

The language of the *habendum* is: "To have and to hold the same to the said Catharine Smith, during her

natural life, and after her death, to the *said surviving* child-ren of Catharine and Elijah Smith. . . ."

The expression " said surviving children" refers to the children before mentioned in the granting clause, and shows expressly, what would otherwise be implied, that it was the children who might survive their mother for whom provision was made.

The plaintiff's wife having died before her mother, she took nothing under the deed of Helen McDowell. What rights, if any, he may have through her under the convey-ance of Elijah Smith to the children, is not a material inquiry in the present case ; for under that conveyance no right of possession can accrue until after the determination of the intervening life estate of the children.

*Leave refused.*