GERTRUDE STEARNS, Plaintiff, *v.* THE ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Defendant.

Supreme Court, New York County, December 7, 1934.

*Forrest S. Chilton,* for the plaintiff.

*Chauncey L. Grant,* for the defendant.

ROSENMAN, J. This is a motion to strike out the defense as insufficient in law. The complaint alleges: That the plaintiff entered the building of the defendant for the purpose of giving information and complaining about claimed misconduct of a member of the bar; that she inquired as to the whereabouts of a ladies' room, and was directed by one of defendant's attendants to such room; that because of defendant's negligent maintenance of the entrance thereto, she fell over the marble sill of the doorway; and that she sustained injuries as a result thereof. She also alleges that the defendant is a corporation organized for the purpose of " elevating the standard of integrity, honor and courtesy in the legal profession," and in this regard invites the public to appear and present to it complaints and information of misconduct by members of the bar.

The defendant denies the alleged negligence; and sets up as an affirmative defense that it was organized, *inter alia,* " to cultivate the science of jurisprudence, promote reforms in the law, facilitate the administration of justice, elevate the standard of integrity, honor and courtesy in the legal profession." It also alleges that it is a non-stock corporation, and not a business corporation for profit; that neither its officers nor members receive any remuneration; that it is supported mainly by private donations and membership fees; that it selects its employees with due diligence and care. Claiming to be an educational and eleemosynary institution, the defendant denies liability to the plaintiff, especially since the plaintiff, at the time of the alleged accident, was a recipient and beneficiary of the defendant's benevolence.

The negligence alleged here is the negligence of an administrative officer of the defendant, viz., the one charged with the duty of making physical repairs to the building and keeping the premises free from defects.

Two questions are raised by this motion: (1) Is a bar association such an educational, eleemosynary or charitable organization as to come within the rules of law relating to liability for the negligence of its servants and agents peculiarly applicable to such institutions; and (2) is such a charitable organization immune from liability for the negligence of its agents both as to administrative, as well as to non-administrative, functions?

The exemption of charitable corporations from liability for the negligence of its agents and servants, upon one theory or another, has been firmly established in the law of almost every State. Some courts have reached this conclusion by declaring that recovery against such institutions would result in an unwarranted dissipation of the funds which have been established for charitable purposes — the so-called " trust funds " doctrine. (*Fire Ins. Patrol* v. *Boyd*, 120 Penn. St. 624; 15 A. 553; *Perry* v. *House of Refuge*, 63 Md. 20; *Abston* v. *Waldon Academy*, 118 Tenn. 24; 102 S. W. 351; *Williamson* v. *Louisville Industrial School*, 95 Ky. 251; *Parks* v. *Northwestern University*, 218 Ill. 381, 385; 75 N. E. 991; *Adams* v. *University Hospital*, 122 Mo. App. 495; 99 S. W. 453; *Roosen* v. *Peter Bent Brigham Hospital*, 235 Mass. 66; 126 N. E. 392; *Weston's Adm'x* v. *Hospital of St. Vincent of Paul*, 131 Va. 587; 107 S. E. 785; *Downes* v. *Harper Hospital*, 101 Mich. 555; 60 N. W. 42; *Jensen* v. *Infirmary*, 107 Me. 408; 78 A. 898; *Duncan* v. *Nebraska Sanitarium*, 92 Neb. 162; 137 N. W. 1120; *Fordyce* v. *Woman's, etc., Association*, 79 Ark. 550; 96 S. W. 155.) (See, also, Tort Responsibility of Charitable Corporations, 34 Yale Law Journal, 316.)

Other courts have placed the exemption upon other theories, viz., that one who applies to a charitable organization for its benevolence impliedly waives any claim of liability against the institution for its agents' negligence — the so-called " waiver " doctrine; or that the agents and servants the corporation selects (if selected with due care) are independent contractors and not servants of the institution, so that the doctrine of " *respondeat superior* " does not apply. (*Hearns* v. *Waterbury Hospital*, 66 Conn. 98; 33 A. 595; *Glavin* v. *Rhode Island Hospital*, 12 R. I. 411; *Hillyer* v. *St. Bartholomew's Hospital*, L. R. [2 K. B. 1909] 820; Tort Responsibility of Charitable Corporations, *supra*.)

By whatever reasoning the courts of the various States reach the same conclusion, the underlying idea of the doctrine is that of public policy. As was pointed out in *Ettlinger* v. *Trustees of Randolph-*

*Macon College* (31 F. [2d] 869, at p. 872): " All of these theories have to a greater or less extent entered into the formulation of the rule of law which has now become too well settled to be questioned or overturned. Underlying all of them is the matter of public policy, and it is upon this that the rule may be said finally to rest. The theory that trust funds are not to be taken under execution for torts of those who administer them rests, in the last analysis, upon considerations of public policy, as does the holding that the rule *respondeat superior* shall not apply to the agents and servants of a charity. So also, the theory of implied agreement can be sustained only if the agreement be conceived of as implied in law as a matter of public policy. But, resting upon public policy, the rule rests upon a sufficiently firm foundation." (See, also, Tort Responsibility of Charitable Corporations, *supra; Weston's Adm'x* v. *Hospital of St. Vincent of Paul, supra; Calvin* v. *Rhode Island Hospital, supra.*)

Although this State has now rejected the " waiver " doctrine (*Phillips* v. *Buffalo General Hospital,* 239 N. Y. 188) and the " trust funds " doctrine (*Hordern* v. *Salvation Army,* 199 N. Y. 233), our courts uniformly absolve charitable institutions from liability for the negligence of their non-administrative agents such as doctors, nurses, surgeons, teachers and professors. (*Collins* v. *New York Post Graduate Medical School,* 59 App. Div. 63; *Joel* v. *Woman's Hospital,* 89 Hun, 73; *Hordern* v. *Salvation Army, supra; Wilson* v. *Brooklyn Homeopathic Hospital,* 97 App. Div. 37; *Cunningham* v. *Sheltering Arms,* 135 id. 178; *Kellogg* v. *Church Charity Foundation,* 203 N. Y. 191; *Laubheim* v. *De K. N. S. Co.,* 107 id. 228; *Schloendorff* v. *Society of New York Hospital,* 211 id. 125; *Phillips* v. *Buffalo General Hospital, supra; Matter of Bernstein* v. *Beth Israel Hospital,* 236 N. Y. 268; *Hamburger* v. *Cornell University,* 240 id. 328.)

The theory of the New York courts now rests on the absence of the doctrine of *respondeat superior.* The rule is limited to the persons who receive the charity's bounty; it does not bar the right of a stranger to sue a charitable organization for its negligence. (*Kellogg* v. *Church Charity Foundation, supra; Hordern* v. *Salvation Army, supra.*)

In New York the question of the liability of a charitable institution for negligence of its administrative agents is still undecided. The question is not one of personnel or title, but rather of function. In *Phillips* v. *Buffalo General Hospital* (*supra*) the court included within the rule a hospital orderly, who negligently placed a hot water bottle on a patient, on the ground that he was acting as a nurse in so doing. But the court was not called upon to determine, and did not determine, whether or not the negligence of an

orderly, acting as an administrative servant, would subject the hospital to liability.

In fact, in a later case, CARDOZO, J., said (*Hamburger v. Cornell University, supra*, at p. 335), "The question is still open whether it [a hospital] is liable to patients for the negligence of servants or administrative agents."

The most recent reported case on this subject in this State is *Mills v. Society of New York Hospital* (242 App. Div. 245). This case follows the general rule prevailing in New York as hereinabove discussed. The court said in the course of its opinion: "Respondent points to no case in New York State which directly draws a distinction between administrative and medical acts of the kind presented in the record before us." The opinion immediately thereafter states that there are dicta to the effect that a benevolent institution might be liable for the administrative acts of its employees. No such dicta are, however, set forth; and indeed there is quoted the very statement of CARDOZO, J., above quoted, to the effect that the question is still open.

The public policy which forms the basis of the rule should be as broad as the situations it is intended to cover. It is designed to protect charity from claims of litigation. As between the dispenser of public benevolence and the unfortunate victim of negligence, the law has determined to protect the former at the expense of the latter. As a matter of public policy, no distinction based upon logic or expediency can be made between administrative and non-administrative acts. A public policy, so explicitly enunciated, must be permitted to function in a vital manner to carry out the ends for which it was designed.

The question remains: Is this defendant a charitable corporation?

At common law, charitable organizations have been defined to be those " as are constituted for the perpetual distribution of free alms of the founders of, and the contributors to, them, to such purposes and in such manner as they have directed. Their principal aim is to benefit needy ones in other ways than by improving their morals, and sometimes a corporation formed for the purpose of accomplishing the moral reformation of a certain class of people is treated as a charitable institution. Their principal and distinctive features are that they have no capital stock and no provision for making dividends or profits, but derive their funds mainly from public and private charity and hold them in trust for the object of the institutions." (11 C. J. 303, § 9.)

After repeating almost verbatim this definition, 5 Ruling Case Law (372, § 117) adds: "The true test of an [charitable] institution is its origin and objects." "Charity in the legal sense is not

confined to mere alms-giving or the relief of poverty and distress, but has a wider signification, which embraces the improvement and promotion of the happiness of man." (Id. § 119.)

"106. *Undertakings which are and which are not Charitable.* The distinguishing characteristics of these undertakings are: First: Their origin, in the donations of benevolent persons or in grants from the State. Second: The manner in which they are conducted — not for the pecuniary profit of their managers or owners, but for the promotion of the welfare of others." (Burdick, Law of Torts [4th ed.], 139, § 22.)

In the case of *Corporation of Chamber of Commerce of State of New York v. Bennett* (143 Misc. 513, 515), UNTERMYER, J., holding the Chamber of Commerce of the State of New York to be a charitable corporation, said: "Charity is not limited to the care of the sick and the relief of the destitute. (Fowler, Law of Charitable Donations, p. 70.) In its broader aspects it may include any purpose of general benefit untainted by motives of private gain. (See Shelford, Law of Mortmain, p. 61.) 'When the purpose accomplished is that of public usefulness unstained by personal, private or selfish considerations, its charitable character insures its validity.' (*Matter of McDowell*, 217 N. Y. 454.) The diverse purposes which have been sustained as charitable are enumerated, with many illustrations, in *Sherman v. Richmond Hose Co.* (230 N. Y. 462) and *Matter of Frasch* (245 id. 174). It is unnecessary to repeat them here. It is sufficient for present purposes to say that the plaintiff's charter powers, ' to promote and extend just and lawful commerce,' not for the advantage of any individual or special group, but in the public interest, cannot be classified except as charitable."

These definitions are applicable to the defendant corporation. It performs a public function for the benefit of all, untainted by motives of private gain in " cultivating the science of jurisprudence, facilitating the administration of justice, elevating the standard of integrity, honor and courtesy in the legal profession." All these chartered powers are charitable in nature. Since it is a non-profit organization without capital stock, it fully conforms to the requirements of the definition.

When the plaintiff made use of the defendant's facilities, she was, at the time of the alleged accident, a beneficiary of the defendant's charity — well within the purposes for which the defendant was organized. Consequently, the defendant is not liable to the plaintiff for any injuries she may have suffered. The motion is, therefore, denied.