FERRIS ET AL., APPELLEES, *v.* SCHUHOLZ ET AL., APPELLANTS.

(No. 8243—Decided May 20, 1957.)

*Mr. David P. Tarbell,* for appellees.
*Messrs. Kunkel & Kunkel,* for appellants.

LONG, J. This is an appeal *de novo* on a stipulation of facts, relating to the construction of a deed, the granting clause of which provides:

"Do hereby grant, bargain, sell and convey to the said Lucy Marvin during her life and then to her children that may be then living and their heirs and assigns forever * * *."

The habendum clause recites:

"To have and to hold the same to the only proper use of the said Lucy Marvin and her children and their heirs and assigns forever."

Finally, the warranty clause provides:

"Doth hereby covenant with said Lucy Marvin and her children and their heirs and assigns."

The first matter of importance is the construction of the deed, dated 1894, from McClymon to Lucy Marvin. The grant-

ing clause of that deed clearly gives to Lucy Marvin nothing more than a life estate, with a *contingent* remainder to her children who should survive her, their heirs and assigns, and with a reversion after the contingent remainder to the grantor, McClymon. The intent of the grantor is clear from the granting clause language. *Smith* v. *Block* (1876), 29 Ohio St., 488. Only those children who would be living at the time of Lucy's death could take any interest at all. *Ibid.*

The habendum clause should be read with the granting clause, as explanatory and modifying, if the same can be done without raising some irreconcilable repugnancy to the granting clause. *Martin, Admr.,* v. *Jones* (1900), 62 Ohio St., 519, 57 N. E., 238. The purpose of such a comparison is to determine the grantor's intent. It is the intent which controls the distribution of the proceeds of the land in question here. The language of the habendum is to "the said Lucy Marvin and her children and their heirs and assigns forever." Does this language modify, enlarge, or restrict the estate granted previously in the granting clause? I think it does not. The grantor, had he intended to enlarge the estate in his daughter Lucy Marvin would have used language which more closely brought the grant into the rule of Shelley's case, which was in force at the time of the deed as a rule of property, presumably known to the grantor; or he could have used language conforming to a common-law fee tail estate, also in force at the time. He did neither, but rather short-handedly described the substance of the estate denoted in the granting clause.

The warranty clause is the same as the habendum, minus the word "forever."

It has long been the tradition in Ohio to give the widest reasonable interpretation to the "four corners" of a deed as regards the broadness of an estate. Likewise, doubts should be resolved in favor of a fee simple, *i. e.,* doubts as to the grantor's intention. See the excellent handling of a difficult deed in *Sheets, Gdn.,* v. *Mouat,* 5 N. P. (N. S.), 22, 18 O. D. (N. P.), 121, by Judge Matthias. Although Judge Matthias found a fee simple in that case, the position of words, grammatical construction, and the like were quite ambiguous in the granting and habendum clauses. The use of the word "heirs" in the war-

ranty was found to have been enough to technically interpret the deed as having granted an estate in fee simple.

The adherence to form and technicality during the 19th century regarding construction of deeds and estates would seem almost conclusive on our interpretation of this deed. In 1894, the use of the word, "heirs," in a related position to the grantee or taker, grammatically was needed to show a fee simple. *Sheets, Gdn.,* v. *Mouat,* and cases cited therein. Also, Shelley's rule was properly applicable only when an estate was limited either mediately or immediately to the "heirs" of the life tenant. *Dix* v. *Benzler,* 32 Ohio Law Abs., 599. The grantor in the deed before us did not so place the word "heirs" as to raise any inference anywhere in the deed that he intended to convey a fee simple either under Shelley's case or under technicality. Our original interpretation must, therefore, stand. The children who should survive Lucy Marvin took by purchase, of right, and not by limitation, or descent.

Of course, had this deed been executed subsequently to August, 1941, the statute abolishing the Shelley rule would have resulted in the same conclusion as we have reached here. And, as we understand the enactment of that statute (Section 10504-70, General Code), its purpose was to more surely give effect to a grantor's intention over and above some technical rule of property.

However, the instant deed did not follow the technicalities we have alluded to above, and thus, coincidentally, our conclusion conforms, we feel, to what the grantor, McClymon, intended in 1894.

It follows that the appellants Bache, the children of a child of Lucy Marvin who predeceased Lucy Marvin, have no interest in the proceeds of the land by reason of the fact that the interest in their parent never became vested, but was defeated by the nonhappening of the requisite condition precedent.

*Judgment accordingly.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.