THOMAS ET, EXTRS., PLAINTIFFS, *v.* HARRISON ET, DEFENDANTS.

Probate Court, Cuyahoga County.

No. 581463.

*Mr. Allan Hull,* for plaintiff, William K. Thomas.

*Mr. Frederick W. Frey,* assistant prosecuting attorney, for Public Libraries.

*Messrs. Baker, Hostetler & Patterson,* for Cleveland Bar Association and Harvard Law School.

*Mr. Naren Biswas,* assistant attorney general, for Mark McElroy, Attorney General of Ohio.

*Mr. Raymond D. Metzner,* for Cuyahoga County Bar Association.

*Mr. Jack G. Day, Mr. Bernard A. Berkman, Mr. Robert L. Merritt, Mr. Marvin S. Zelman* and *Mr. Larry S. Gordon,* for Civil Liberties Union and The American Civil Liberties Union.

*Messrs. Grossman, Schlesinger & Carter,* by *Mr. Edward D. Familo* and *Mr. B. J. Adelson,* for defendants, Jean Bradley Harrison, Lucia D. Harrison, Michael Bradley Harrison, Anthony Paul Harrison, Gina Maria Harrison, Joseph Clinton Harrison, Andrea Maria Harrison, Peter Marvin Harrison and John Christoper Harrison.

*Mr. Stanley G. Webster,* for East Cleveland Public Library.

*Messrs. Ford, Clarke, Howland & Wegman,* for Shaker Heights Public Library.

MERRICK, P. J. The facts which have precipitated this declaratory judgment action have been adequately set forth

in the briefs and pleadings, so it seems unnecessary to repeat them here. The main issues with which the Probate Court is concerned are:

1. the validity of the discretionary trust under the rule against perpetuities;

2. the validity of the power of appointment, following the termination of such trust under the rule against perpetuities; and

3. the applicability of the Ohio mortmain statute to the remainder interests to be appointed under the power of appointment.

### I. *VALIDITY OF THE DISCRETIONARY TRUST*

The will directs in Item IV (3) that half of the residuary estate is to be held in trust for the benefit of testatrix's son, Jean B. Harrison, his wife, and his issue. The trustees are given absolute discretion to expend so much of the income and/or principal of the trust as they deem necessary to alleviate the financial burdens of, or to provide education for, any or all of the designated beneficiaries and to accumulate in any year the income not so spent. The trust is to continue as long as any of the beneficiaries who are born within twenty years after testatrix's death remain alive. This Court is asked to determine whether the provisions of this trust violate the rule against perpetuities.

In Ohio, the common-law against perpetuities has been codified. Section 2131.08, Revised Code, provides:

"No interest in real or personal property shall be good unless it must vest, if at all, not later than twenty-one years after a life or lives in being at the creation of the interest * * *. It is the intention by the adoption of this section to make effective in Ohio what is generally known as the common law rule against perpetuities."

It has been said that the fundamental policy behind the rule is to preserve the freedom of alienation of property. *Joseph Schonthal Co.* v. *Village of Sylvania*, 60 Ohio App., 407, 21 N. E. (2d), 1008 (1938); *Braun* v. *Central Trust Co.*, 104 N. E. (2d), 480 (Ohio C. P., 1951), *aff'd.* 92 Ohio App., 110, 109 N. E. (2d), 476. But Professor Gray, in his famous treatise, states that the immediate purpose of the rule is to prevent the crea-

tion of interests which may vest too remotely. *Gray, The Rule Against Perpetuities*, Secs. 1-4 (4th ed., 1942). Consequently, the rule applies only to the *vesting* of interests. It applies to equitable as well as legal interests. *Rudolph* v. *Schmaltstig*, 25 Ohio Law Abs., 249 (C. P., 1937). *Cf. Jones* v. *Webster*, 133 Ohio St., 492, 14 N. E. (2d), 128 (1938); *The Cleveland Trust Co.* v. *McQuade*, 106 Ohio App., 237, 142 N. E., (2d), 249 (1957). Let us first see then, whether the interests created under this trust are vested.

An interest is not vested if, in order for it to come into possession, the fulfillment of some condition precedent other than the determination of the preceding estate is necessary. 20 Ohio Jurisprudence (2d), Estates, Section 136 (1956); Gray, The Rule Against Perpetuities, supra, Section 101; Restatement, Property, Section 157, comment a. A remainder may be contingent because it is to take effect upon the happening of some event not certain to occur which is independent of the termination of the preceding estate. 20 Ohio Jurisprudence (2d), Estates, Section 137 (1956). It may also be contingent because the person to whom the remainder is limited is not yet ascertained or not yet in being. *Smith* v. *Block*, 29 Ohio St., 488 (1876); *Barr* v. *Denny*, 79 Ohio St., 358, 87 N. E., 267 (1909).

In a discretionary trust the beneficiary has no definitely ascertainable interest. He cannot compel the trustee to give him any portion of the income where the trust gives the trustee absolute discretion as to the amounts of income to distribute. See Scott on Trusts, Section 128.3 (2d ed., 1956). The beneficiary cannot be certain that he will ever enjoy any of proceeds of the trust. Consequently, where the extent of the interest of the beneficiary is dependent upon the exercise of discretion by the trustee, that interest is contingent. *Thomas* v. *Gregg*, 76 Md., 169, 24 Atl., 418 (1892); *Andrews* v. *Lincoln*, 95 Me., 541, 50 Atl., 898 (1901); *Moore* v. *Moore*, 59 N. C. (6 Jones Eq.), 132 (1860); *Angell* v. *Angell*, 28 R. I., 592, 68 Atl., 583 (1908); *Denny* v. *Hyland*, 162 Wash., 68, 297 Pac., 1083 (1931), English: *In re Vaux* (1939), Ch., 465; *In re Bernard* (1916), 1 Ch., 552; *In re Bleu* (1906), 1 Ch., 624. Gray, Perpetuities, supra, Sec. 246; Restatement, Trusts (2d), Section 62q. Such interest does not vest until the trustee exercises his discretion.

Viewed in another way, the discretion in a trustee to distribute principal and income to any or all members of a designated class is tantamount to a special power of appointment. Simes and Smith, The Law of Future Interests, 216, Section 1277 (2d ed., 1956); VI American Law of Property, Section 24.30 (1952). The exercise of the power is a condition precedent to the vesting of any interest in a beneficiary of the trust. Simes & Smith, supra, Section 1274; Gray, Perpetuities, supra, Section 515.

Thus it is obvious that the interests of Jean B. Harrison, his wife, and his issue, are contingent. Their interests in the income and principal of the trust are wholly dependent upon the trustee's discretion. The interests of all the beneficiaries are contingent because subject to a condition precedent. In addition, they are contingent because the beneficiaries are unascertained, in the sense that the trustee may select one or more of them to receive proceeds from the trusts, or unborn in the case of possible further issue of Jean.

Having determined that these interests are contingent, it still remains to be seen whether these interests must vest within the period of the rule. The Ohio statute, echoing the common law, says that interests must vest, if at all, not later than twenty-one years *after lives in being at the creation of the interest.* Section 2131.08, Revised Code. As the statute expressly states, and as the authorities unanimously proclaim, the twenty-one year period must *follow*, not precede, the lives in being by which the period of the rule is measured. Simes & Smith, supra, Section 1225; Restatement, Property, Section 374, comment e, Illus. 6 comment o; VI American Law of Property, supra, Section 24.14. Furthermore the measuring lives must be lives *in being at the creation of the interest,* i. e. in the case of a testamentary trust, at the death of the testator. 42 Ohio Jurisprudence (2d), Perpetuities, Sections 27-28 (1960).

A simple illustration will indicate that the interests created under the testamentary trust of Mrs. Harrison will not necessarily vest within the period of the rule. Mrs. Harrison was survived by her son, Jean, his wife and their three children. Since the death of Mrs. Harrison, four more children have been born to Jean. Let us suppose that tomorrow Jean, his wife, and

the three children who were alive at the death of Clara Harrison are all killed in a common accident. Let us suppose further that the inheritance of the four surviving children of Jean is adequate to take care of their needs for twenty-five years; therefore, the trustees of the Clara Harrison trust deem it unnecessary to distribute any income or principal to the children until that time. The interests of the children would not vest until twenty-five years from now. This would be more than twenty-one years after the expiration of lives in being at the death of Mrs. Harrison. Consequently, the rule against perpetuities would be violated.

It is no defense that the probabilities are greater that the interests under the trust will vest within the period of the rule. The statute says the interests *must* vest within the prescribed time. If there is any possibility that the interests will not vest within lives in being plus twenty-one years then the interests are void ab initio. *Cleveland Trust Co.* v. *McQuade*, 106 Ohio App., 237, 142 N. E. (2d), 249 (1957); *Rudolph* v. *Schmalstig*, 25 Ohio Law Abs., 249 (C. P., 1937).

There is no question of severability of interests here. That is, the contingent interests of Jean, his wife and his issue who were alive at the time of Mrs. Harrison's death, cannot be separated from the interests of later born issue. To eliminate the after born issue would warp the testamentary scheme. It would deprive the trustees of their full discretion by narrowing the class of beneficiaries. Therefore, the entire trust fails. *Andrews* v. *Lincoln*, 95 Me., 541, 50 Atl., 898 (1901); *Thomas* v. *Gregg*, 76 Md., 169, 24 Atl., 418 (1892). The Trustees hold upon a resulting trust for Mrs. Harrison's heirs at law. *Andrews* v. *Lincoln, supra.* See Bogert, Trusts and Trustees, Section 468 n., 16 (2d ed., 1953).

II. *VALIDITY OF THE POWER OF APPOINTMENT IN THE TRUSTEE*

The will creates in the trustees, a special power of appointment over the income and corpus remaining at the termination of the trust, to be exercised at the death of the last survivor of the beneficiaries of the trust. As indicated above, the beneficiaries are Mrs. Harrison's son, his wife, and their issue, including those four born within twenty years after her death.

184

The law concerning the application of the rule against perpetuities to a special power of appointment may, for our purposes, be simply stated: If a power can be exercised at a time beyond the limits of the rule against perpetuities, it is bad. Gray, Perpetuities, supra, Section 473; Simes & Smith, supra, Section 1273; Restatement, Property, Section 390. Professor Gray points out that in this situation it is not precisely accurate to say that the power itself is too remote; rather, it is the estate or interest to be appointed that is too remote. In other words, each and every estate or interest which may be appointed, is based on a contingency, the exercise of the power, which may happen at such a time that the estate appointed will be too remote. Gray, Perpetuities, Section 474.1. But see Gray, Perpetuities, Section 472. For the remoteness of interests appointed under a special power of appointment is measured from the time of the creation of the power, not from the time of its exercise. VI American Law of Property, supra, Section 24.34.

If the power in this case is exercisable more than twenty-one years after lives in being at Mrs. Harrison's death, then the power violates the rule against perpetuities. If the beneficiaries of the trust are taken as measuring lives, then the power of appointment fails for remoteness. The reasoning here is the same as above concerning the validity of the interests under the trust. The beneficiaries of the trust who were alive at the death of Mrs. Harrison may all predecease by more than twenty-one years the beneficiaries born within twenty years following Mrs. Harrison's death.

If the trustees are taken as measuring lives the power of appointment would still be invalid. The trust does not make the power of appointment personal to those trustees originally appointed by the will. In fact, Item V expressly provides for the appointment of successor trustees in the event that the original trustees die before the termination of the trust. It is possible that the successor trustees would be persons who were not alive at Mrs. Harrison's death. It is also possible that the power of appointment would not be exercised until more than twenty-one years after the death of the original trustees.

There are no persons who were in being at the creation of

the power of appointment who will necessarily continue in being until twenty-one years before the exercise of the power of appointment. For this reason, the power created in Mrs. Harrison's will fails.

What is the effect of the invalidity of the power of appointment? Certain defendants have constructed an intriguing argument that all members of the class of appointees have a vested remainder under an implied gift. They argue that where a will contains an express gift in default of appointment, as for example, to A for life, and on his death to such of his children as he may appoint, and in default of appointment to B and his heirs, the remainder to B is vested. Simes & Smith, supra, Section 150; VI American Law of Property, Section 21.31; Restatement, Property, Section 276. There is no Ohio law directly on this point. Furthermore, the nature of an interest as vested or contingent is a question of construction; so it is dangerous to speak in generalities about a gift in default being vested. See *Moon* v. *Stewart*, 87 Ohio St., 349 (1913). But it is true that most of the text writers and many of the courts do treat gifts in default as vested. In fact the authorities indicate that if a power of appointment is too remote, or is exercised so as to create interests which are too remote, this does not invalidate vested gifts in default of appointment. *In re Abbott* (1892), 1 Ch., 54. See Gray, Perpetuities, supra, Sections 258, 535.

As the next step in their argument, the defendants contend that in the case of a so-called "power in trust," that is, a special power of appointment whose exercise is deemed imperative, courts hold that in the event of a failure to exercise the power, there is an implied gift in default among all the members of the appointive class equally. The courts are not actually in agreement as to the theory upon which the property is to be given to the appointees. Some courts use a theory of implied gift, others impose a constructive trust upon the property for the benefit of the appointive class. See Simes & Smith, supra, Section 1032; Gray, Powers in Trust and Gifts Implied in Default of Appointment, 25 Harv. L. Rev., 1 (1911). But the modern trend seems to be to use the implied gift theory. See Restatement, Property, Section 367; Restatement, Trusts (2d),

Section 27. But see Simes & Smith, supra, Section 1032. Defendants argue that since the express gift is deemed vested, the implied gift should be regarded as vested also. Thus, they conclude, they have a valid interest in the remainder of the trust proceeds, since vested interests are not subject to the rule against perpetuities.

The defendants' argument is certainly novel. There is no case or any discussion in the texts on this point. However, the gift cannot be sustained on this theory. The implied gift theory has been used to prevent intestacy only where there was a *failure* to exercise a power in trust. It has apparently never been used in the situation where the power itself was invalid. The theory of an implied gift is a legal fiction. It has been criticized on the ground that if the testator really regarded the duty to exercise the power as imperative, why would he be thinking of a gift in default of appointment? Simes & Smith, supra, Section 1032. In the instant case the inconsistency is greater. When testatrix created the power, why would she be thinking of how the property should go in case the power was invalid?

The implied gift theory has never been implied in this situation. To apply it here would be an unprecedented extension of the theory applied to *failure* to exercise the power, not a logical result of the theory. The power is definitely invalid. Therefore, the remainder interests should be deemed invalid.

### III. *VALIDITY OF THE REMAINDER INTERESTS UNDER MORTMAIN STATUTE*

The applicability of the mortmain statute in this case is not really important since the interests in question under this statute are void under the rule against perpetuities. Nevertheless, let us consider this question since it has been argued by the parties.

The power of appointment, whose validity was considered in the preceding section, was entrusted to the trustees to be appointed from: Cleveland Civil Liberties Union, The American Civil Liberties Union, The Consumer's League of Ohio, the Law School of Howard University, Grinnell College, the Cleveland Public Library, or any Public Library in Cuyahoga County, or any Bar Association of Cleveland or Cuyahoga County; to any or all of them, whichever the Trustees feel will best use the

funds "for the advancement of human individual freedom or human knowledge."

Since Mrs. Harrison died two days after she executed her will, survived by a son, the question arises whether the gift is within the purview of Section 2107.06, Revised Code. This statute invalidates any gift to a "benevolent, religious, educational or charitable purpose, or to any state or county * * * or associations in trust for such purpose" which is contained in a will executed within one year prior to the death of the testator, if said testator dies leaving issue.

The focal issue here is whether or not the gift has been given to a charitable or benevolent purpose. The parties all seem to agree that the validity of the gift depends upon whether or not "the advancement of human individual freedom or human knowledge" is a charitable, educational or benevolent purpose. It does not necessarily follow that the appointees of this gift would be limited in their use of the funds to this purpose, for two reasons.

First of all, the majority of jurisdictions in this country do not uphold a gift which is bequeathed in trust for the accomplishment of some general *non-charitable* purpose where there is no definitely ascertained beneficiary. See Scott on Trusts, Section 123 (2d ed., 1956). If the purpose of the trust were charitable, of course, no difficulty would arise.

But if the purpose were charitable the gift in question would fail under the mortmain statute. If the purpose were non-charitable, then as a private trust the trust would fail for a number of reasons:

(1) It would violate the rule against perpetuities. The cases are numerous which hold that where a testator leaves property in trust for a specific non-charitable purpose, such as the erection of a tombstone, or the support of an animal, the intended trust fails if it is to last for a period longer than allowed by the rule against perpetuities. See *In re Estate of Searight*, 87 Ohio App., 417, 95 N. E. (2d), 779 (1950), Scott, supra, 856, Section 123; Restatement, Trust, (2d), Section 123. In the instant case, the recipients of the gift would be organizations and the beneficiaries would be unascertained. Consequently, the period of the rule would consist of twenty-one

years; there would be no measuring lives. See *In re Estate of Searight, supra.* There is no limitation in the will restricting the time during which the gift should be applied to any purpose.

(2) Also, as a private trust the gift would fail for lack of a definite beneficiary. *Minnix* v. *Purcell*, 46 Ohio St., 102, 19 N. E., 572 (1888). This case must be distinguished from those cases in which gifts for the purpose of maintaining graves, erecting monuments, taking care of animals, etc. are upheld by some courts as honorary trusts, despite the lack of definite beneficiaries. *In re Estate of Searight, supra.* These cases involve a specific purpose to which the courts will allow the trustees to devote the gift. But where, as in the instant case, the purpose is vague or too general, the majority of courts hold the gift fails.

The defendants would argue that the above rules relating to private trusts have no application here because this case involves outright gifts. But if the gifts are outright—vesting legal and equitable titles in the appointees—then how can the gift be encumbered with the limitation that if he used "to further human individual freedom or human knowledge?" The absolute owner of property should not be restricted in its use. See Scott, supra, 2556, Section 348.1. Professor Scott suggests upholding such gifts coupled with limitations as powers of appointment. Scott, supra, Section 123. But there is little case law supporting such a result. Furthermore, this would still not cure the defect of the remoteness of the interests vesting under such a power.

In addition, a proper construction of the will does not lead to the conclusion that the testatrix intended to impose a restriction on the gift that it be used *solely* "to further human individual freedom or human knowledge." The only direction in the will pertaining to that condition is given to the *trustees.* They are to appoint the property to whichever of the designated organizations they feel will best use the funds for the advancement of freedom or knowledge. The reasonable interpretation of this provision is that the trustees are to appoint the funds to those organizations whose *general* aims and activities are most consistent with this purpose. For example, if the trustees appointed a law school as the recipient of the funds, it should be be-

cause in the judgment of the trustees, that law school in carrying out its educational objectives, would best use the funds for the advancement of human knowledge. Therefore, we must look to the objectives of each prospective appointee to see whether its purposes are charitable.

But first, let us see what the courts have said concerning the meaning of "charity." Definitions of "charitable purposes" are abundant among the cases and in the texts. It is apparent from these authorities that the term "charity," in the legal sense, has a much broader significance than in common speech. In its technical sense, it is a gift of property to the use of the public, or an indefinite portion of the public, as distinct from specific individuals, for any beneficial or salutary purpose. *In re Estate of Salisbury*, 90 Ohio App., 17, 101 N. E. (2d), 304 (1951), "Charity is not aid to the needy alone, but embraces and includes all which aids man and seeks to improve his condition." *Waddell* v. *Y. W. C. A.*, 133 Ohio St., 601, 604, 605, 15 N. E. (2d), 140, 142 (1938). Because of the broad scope of the term, "charitable," it is not easy to define it. The Restatement of Trusts attempts to solve the problem by designating what purposes are charitable, rather than defining the term: the relief of poverty; the advancement of education; the advancement of religion; the advancement of health; governmental or municipal purposes; other purposes the accomplishment of which is beneficial to the community. Restatement, Trusts (2d), Section 368. See *In re Estate of Julian*, 93 Ohio App., 221, 230, 113 N. E. (2d), 129, 134 (1952). The last category is a "catch-all" which includes all purposes "which are of a character sufficiently beneficial to the community to justify permitting property to be devoted forever to their accomplishment." Restatement, Trusts (2d), Section 374. Do the purposes of the defendant organizations fall within the legal meaning of "charitable"?

There can be no doubt that the purposes of Harvard Law School and Grinnell College are charitable. Education is clearly a charitable function where it is carried on not for profit. In addition, the Ohio mortmain statute itself states specifically that gifts for education come within its purview. Section 2107.06, Revised Code. Consequently, gifts to these organiza-

tions would be void. *In re Lambert's Estate*, 69 Ohio App., 552, 44 N. E. (2d), 325 (1940).

The Cleveland Public Library and all other libraries in Cuyahoga County are also charitable organizations. Their purpose is to circulate books among the public and to perform other services ancillary thereto *for the benefit of the public*. (See stipulation of facts.) The Ohio Supreme Court has stated that the diffusion "of useful knowledge, the acquirement of the knowledge of arts and sciences and the advancement of learning without any particular reference to the poor, are considered charitable objects." *Waddell* v. *Y. W. C. A.*, 133 Ohio St., 601, 605, 15 N. E. (2d), 140, 142 (1938). The circulation of books among the public certainly aids in the diffusion of knowledge so as to characterize the function of a library as charitable. And so the Ohio Supreme Court has ruled. *The Cleveland Library Association* v. *Pelton*, 36 Ohio St., 253 (1880).

The Cleveland, Cuyahoga County Bar Associations present a more difficult problem. No Ohio Court, apparently, has decided the issue of a bar association's status as a charity. An examination of the objects of the Cleveland Bar Association, as contained in its constitution, reveals that they are beneficial to the community:

To uphold and defend the Constitution of the United States and of the State of Ohio; to advance the science of juris prudence and to promote legal and judicial reforms; to exert its influence in the field of the law for the promotion of the public good * * *.

The promotion of these objectives would certainly advance the public welfare; and "advancing the science of jurisprudence" might be regarded as an educational activity. In the two cases in the whole country which are found on this question, the courts held bar associations to be charitable organizations. *Dulles* v. *Johnson*, 273 F. (2d), 362 (2d cir., 1959); *Stearns* v. *Association of the Bar of N. Y.*, 154 Misc., 71, 276 N. Y. Supp., 390 (1934). These decisions seem correct. The activities of the bar are not aimed at promoting the welfare of its members only. By regulating the unauthorized practice of law, the bar serves the community prohibiting those persons from practicing law who are not qualified to do so. Disciplining the legal pro-

fession, the bar serves the community by weeding out those who would work fraud and deceit upon the public. Influencing legislation, the bar serves the community by seeking to improve the technical workings of the law. By way of analogy, it is noted that courts have frequently held that gifts for patriotic purposes are charitable. Scott, supra, Section 374.3; and for the improvement of the structure of government. Scott, supra, Section 374.5. Therefore, it must follow that an appointment of property to either the Cleveland or Cuyahoga County Bar Association would be a charitable gift.

The American and Cleveland Civil Liberties Unions have as their object:

"to maintain throughout the United States and its possessions, the rights of free speech, free press, free assemblage and other civil rights, and to take all legitimate action in furtherance of such purposes."

These purposes—to protect the rights of men and to uphold the civil rights of the Constitution—are for the welfare of the community. Trusts for patriotic purposes have frequently been held to be charitable. Trusts for the promotion of peace are charitable. *Tappon* v. *De blois*, 45 Me., 122 (1858); *Matter of Harmon*, 80 N. Y. S. (2d), 903 (1948). Trusts for the inculcation of patriotism also fall within this group. *Thorp* v. *Lund*, 227 Mass., 474, 116 N. E., 946 (1917). In a somewhat analogous case, the American Jewish Congress, organized for the purpose of safeguarding civil, political, economic and religious rights of Jewish people, was held to be charitable. *In re Murphey's Estate*, 7 Cal. (2d), 712, 62 P. (2d), 374 (1936).

The determination by the Internal Revenue Service that the Civil Liberties Union is not a charity for the purposes of Federal taxes has no bearing on its status as a charity under the Ohio mortmain statute. Frequently organizations are denied recognition as charities for tax purposes because their activities include the promotion of legislative changes—an activity for which tax deductions are not allowed. Compare *Slee* v. *Comm'r. of Internal Revenue*, 42 F. (2d), 184 (2d Cir., 1930), with *Faulkner* v. *Comm'r. of Internal Revenue*, 112 F. (2d), 987 (1st Cir., 1940). See Scott on Trusts, supra, 2677, Section 374.4.

The salutary objectives of the Civil Liberties Union, which

are aimed at the advancement of the rights of all men, are charitable in nature.

The final member of the class of appointees is the Consumer's League of Ohio. An organization may be classed as non-charitable because its objectives are the financial or commercial benefit of a limited group of persons. *Better Business Bureau* v. *United States*, 326 U. S., 279 (1945) ; *Boston Chamber of Commerce* v. *Assessors of Boston*, 315 Mass., 712, 54 N. E. (2d), 199 (1944). But the cases indicate that trusts will be classed as charitable where the purpose is to promote the economic benefit of the community. *In Powell's Estate*, 71 D. & C., 51 (Pa., 1950), a trust was determined to be charitable which had as its purpose the establishment of an award to be given periodically to the citizen of Philadelphia who should by his application to the city's manufacturing and commercial interests produce the best results for the prosperity of the city. In *Attinson* v. *Consumer—Farmer Milk Cooperative, Inc.*, 197 Misc., 336, 94 N. Y. S. (2d), 891 (1950), a cooperative corporation organized to benefit farmers and consumers through the distribution of milk, and otherwise to serve the economic welfare of the public, was held to be charitable.

The purposes of the Consumer's League of Ohio are: to further the welfare of those who make and distribute commodities and to take a philanthropic and benevolent interest in the welfare of working women and children and to bring about the establishment of better conditions of welfare for women and children in trade and industry. These objectives are to benefit the public at large, as well as those who make and distribute commodities. The latter group represents a fairly large segment of the community so that the promotion of the welfare of the group might be deemed charitable itself. Consequently, the Ohio Consumer's League is a charity within the meaning of the mortmain statute.